REPLEVIN — TITLE TO PROPERTY — MITIGATION OF DAMAGES—FRAUDULENT DEED—EVIDENCE.

In an action upon a replevin-bond, it is competent for the defendant, in mitigation of damages, to show title to the property in the plaintiff in replevin, and the plaintiff may rebut such evidence, by showing that the deed, under which the plaintiff in replevin claimed title, was fraudulent and void.

Action of debt [by Tench Ringgold, for the use of Robert Boone, against Samuel Bacon] upon a replevin-bond, given by one Hardin, who replevied the goods which had been seized by the present plaintiff, Tench Ringgold, marshal of the District of Columbia, upon a fieri facias at the suit of Robert Boone, against one Charles J. Queen. The defendant, Samuel Bacon, was one of Hardin's sureties in the replevin-bond. The breach assigned was, that Hardin, the plaintiff in replevin, did not prosecute his writ with effect, having been non-prossed upon a rule to declare.

Upon the trial of this action upon the replevin-bond, Mr. Wallach and Mr. Jones, for defendant, in mitigation of damages, offered evidence that Hardin, the plaintiff in replevin, was the owner of the goods replevied; and cited McDaniel v. Fish [Case No. 8,744], in this court, at December term, 1818.

R. P. Dunlop, contra, cited Pye v. Wood, 3 Har. & J. 504: that, in debt on a replevin-bond, the defendant cannot give in evidence, in mitigation of damages, the worthlessness of the property replevied.

1 [Reported by Hon. William Cranch, Chief Judge.]

Mr. Wallach, in reply, cited Wood v. May [Case No. 17,956], in this court at the last term.

THE COURT (THRUSTON, Circuit Judge, doubting,) said, that as this matter, if pleaded to this action, would not be a bar, it may be given in evidence, in mitigation of damages, in this case, although it would have been a bar to the avowry, if it had been pleaded in the action of replevin.

Mr. Key, for plaintiff, then offered evidence to prove that the deed, under which Hardin, the plaintiff in replevin, claimed title to the goods, was fraudulent and void, and that one Richard T. Queen, held the property in trust for Charles J. Queen, as whose goods the marshal had seized them in execution, at the suit of Robert Boone. Deady v. Harrison, 1 Starkie, 60.

THE COURT (nem. con.) permitted the evidence to be given.

Verdict for plaintiff $352.37 with interest from 28th December, 1824.

RINGGOLD (BLAGROVE v.). See Case No. 1,480.

RINGGOLD (BURFORD v.). See Case No. 2,152.

## Case No. 11,843.

### RINGGOLD v. CROCKER.

[1 Abb. Adm. 344.][1]

District Court, S. D. New York. Nov., 1848.

SEAMEN—RIGHT TO BE CURED — INJURY IN SERVICE OF THE SHIP—WRONGFUL VIOLENCE OF OFFICER.

1. A seaman is entitled to be cured at the expense of the ship, of sickness, hurts, wounds, &c., incurred in the service of the ship.
[Cited in The Ben Flint, Case No. 1,299.]

2. The phrase "service of the ship" is not confined in meaning to acts done for the benefit of the ship, or in the actual performance of the seaman's duty.

3. A sailor must, in judgment of law, be deemed in the service of the ship while under the power and authority of its officers; and he is entitled to be cured at the expense of the ship of any injury received by him in executing an improper order, or inflicted upon him directly by the wrongful violence of an officer of the ship in the exercise of his authority as officer to punish him.

This was a libel in personam, by Washington Ringgold, against Ebenezer B. Crocker and others, owners of a ship, to recover seamen's wages. The libellant shipped for a voyage from New York to the East Indies, and back to New York, on board the ship, at $17 per month wages. The voyage covered a period of fourteen months. This action was brought to recover the wages earned on the voyage, including the expenses of his cure on shore. It appeared that while the vessel was in port at Manilla, the libellant went on shore one afternoon, and stayed

1 [Reported by Abbott Bros.]

over night. As he came alongside the vessel the next morning, the mate asked him why he went ashore without leave. The libellant replied that he went because he wanted to. As the libellant came up the side of the vessel, the mate struck him three blows on the head with an iron belaying-pin, by which libellant was much hurt. He went on shore and complained to the master, who was then boarding on shore, and who thereupon placed him at a house on shore, and directed a physician to attend him. Twenty-one days passed before libellant was able to return to his duty on board ship. The respondent claimed to deduct for the time thus lost, and this presented the principal question discussed. There was no evidence that the libellant was required to stay on board ship to be cured, or that the ship was provided with means for his cure.

Alanson Nash, for libellant.

Burr & Benedict, for respondent.

The libellant, it appears, was not injured in the service of the ship, nor in the course of his duty. The injury received by him was a mere personal wrong, brought on by the insubordination and insolence of the libellant, and for the consequences of which the respondents were not responsible.

BETTS, District Judge. It is plain that the ship is liable for the charges incurred in the medical treatment of the libellant on shore, and expenses of attendance, if his case was one which the ship was bound to provide for.[2] Jac. Sea Laws, 144; Abb. Shipp. 259, note 1; Curt. Merch. Seam. 106, note 2; Id. 107, note 1.

The point taken for the respondents is, that the libellant was wounded in a personal brawl with a sub-officer of the ship, and that they are not answerable for the expenses of the cure of his hurt received in that manner.

The testimony proves the injury to have been received by the libellant on board the ship, from blows inflicted by the mate in punishing him for alleged misconduct and contumacy. The instrument employed was every way an improper and unsafe one to use in correcting a sailor, if he rightly deserved punishment. The mate, however, plainly considered himself in the exercise of his authority over the libellant as an officer of the vessel, for he first reprimanded him for absence from the vessel, and then struck him with a belaying-pin because of impertinent or disrespectful language in reply. There was at the time no quarrel between them, and no assault upon the mate was attempted on the part of the libellant.

The version given by the mate of the trans-

action is contradicted by the bystanders, and ought, under the circumstances, to have little weight without corroboration. The excess of punishment given by an officer in the exercise of his authority on board, or the use of an improper instrument to inflict it, cannot change the nature of the sailor's rights in respect to the ship or her owners. Had the seaman sickened from the infliction of a punishment given by an officer in the ordinary manner on ship-board, and which proved to be beyond his strength or state of health to bear, there can hardly be a question that he would be entitled to be cured of such sickness at the expense of the ship. A sailor must, in judgment of law, be deemed in the service of the ship, whilst under the power and authority of its officers; and an injury received by him in executing an improper order, or inflicted on him directly, by the wrongful violence of the officer, in the exercise of his rightful power and command over him as an officer, must equally entitle him to this privilege secured him by the law maritime.

The ancient sea ordinances provided, that mariners falling sick during the voyage, or hurt in the performance of their duty, should be cured at the expense of the ship. Curt. Merch. Seam. 106, note 2.

The service of the ship is by no means limited to acts done for the benefit of the ship, or in the actual performance of seaman's duty on board. Reed v. Canfield [Case No. 11,641], was the case of a sailor who drifted to sea, and was badly frozen, in a boat, in port, after the voyage had terminated. The whole boat's company had gone on shore wrongfully, and had also disobeyed orders in overstaying the time limited them, and that misconduct probably led to the injury; as a sudden change of weather, occurring subsequent to the termination of the leave of absence, prevented the boat reaching the ship, and caused the exposure which resulted in the libellant's being frozen and disabled. Still the court held that he was entitled to charge the ship with his cure.

If the present case presents a point not clearly included within any adjudged case, the principle, in my judgment, is common with that upon which the ship is ordinarily held liable for the cure of seamen; and I am in no wise disposed to weigh a balancing question, should this be regarded one, unfavorably to the mariner. If there is hardship in the rule, it is better that it should bear more heavily on the ship and owners than on the seaman. The ship is to bear the expense of board, medical advice and attendance, and those other charges incident to the nature of the complaint and the climate, or circumstances of the confinement. The George [Case No. 5,329]; Lamson v. Wescott [Id. 8,035]. And the responsibility of the owners personally is co-ordinate with that of the ship. 3 Kent, Comm. (5th Ed.) 133, note; Abb. Shipp. 158, 172, 780.

---

[2] See, also, on the liability of the ship for the expenses of a mariner's cure of hurts received in her service, The Atlantic [Case No. 620].

. I shall pronounce for full wages for the voyage, and an order of reference must be taken to a commissioner to state the amount. Such deductions are to be made as are properly allowable for payments, if any, by the master, in behalf of the libellant, incidental to his cure, and not directly required for it. The respondents are also to be credited with the amount of advance payments in money, and articles furnished the libellant at his request by the master during the voyage. Decree accordingly.