THE ST. LOUIS.

HITCHCOCK v. THE ST. LOUIS.

ST. LOUIS, I. M. & S. RY. CO. v. SAME.

(District Court, D. Kentucky. November 16, 1891.)

**1. ADMIRALTY JURISDICTION—RAILROAD FERRY-BOATS.**
Rev. St. U. S. § 5258, authorizing railroads to carry over its "road, boats, bridges, and ferries" all passengers, freight, etc., "on their way from any state to another state, and to connect with roads of other states, so as to form continuous lines for the transportation of the same to the place of destination," does not make a steam ferry-boat owned by an interstate railway company, and used exclusively in carrying its trains across the Mississippi river between two states, a part of the railway, in such sense as to exclude admiralty jurisdiction over it, and the same may be libeled for wages.

**2. SEAMEN—ATTACHMENT OF WAGES.**
Under Rev. St. U. S. § 4612, declaring that the word "ship" shall be taken to comprehend "every description of vessel navigating on any sea or channel, lake or river, to which the provisions of this title are applicable," and that persons engaged in the navigation thereof shall be considered as "seamen," a person serving on board such ferry-boat is entitled to the benefit of section 4536, declaring that no wages due any "seaman or apprentice" shall be subject to "attachment or arrestment."

**3. SAME—FAILURE TO CLAIM EXEMPTION.**
But when such wages have been paid over for a debt justly due, under attachment proceedings in which the seaman, though properly served, failed to claim exemption under the statute, a court of admiralty will not decree a second payment to the seaman himself.

**4. SAME—COSTS.**
When, however, the seaman's admiralty proceeding was begun before a United States commissioner prior to the judgment of the justice, and the railroad company had actual notice thereof before that time, it was the latter's duty to call the justice's attention to that proceeding, and because of its failure to do so it will be charged with the costs thereof.

In Admiralty. Libel by J. J. Hitchcock against the steamer St. Louis, owned by the St. Louis, Iron Mountain & Southern Railway Company, for wages. Decree for libelant for costs only.

*James Campbell, Jr.*, for libelant.

*Quigley & Quigley*, for claimant.

BARR, J. This is a libel *in rem* for the wages claimed by the libelant, and the questions raised by the claimant, the St. Louis, Iron Mountain & Southern Railway Company, are: (1) Has a court of admiralty jurisdiction of the subject? (2) If it has jurisdiction, is not the payment of the wages due libelant by the claimant defendant, by and under an order of a state court under a proceeding of garnishment, a bar to a recovery in this court?

The steamer St. Louis is owned and used by the claimant defendant for the purpose of transporting its trains across the Mississippi river. It is really a steam ferry-boat, with iron rails so adjusted as to permit the trains of the defendant to be run over and upon it, and thus be transported across the Mississippi river by the steamer. This boat is registered, has a large tonnage, and has the capacity of transporting

freight and passengers other than those in or on a train of cars; but it is not thus used, nor was it at the time the wages were earned by the libelant. The defendant insists that this ferry-boat was a part of the line of its railroad, under section 5258 of the Revised Statutes, and therefore not subject to the jurisdiction of an admiralty court. That section authorizes "railroads to carry upon and over its road, boats, bridges, and ferries all passengers," etc., "mails, freights, and property, on their way from any state to another state, and to connect with roads of other states, so as to form continuous lines for the transportation of the same to the place of destination." But we do not think it has any bearing upon the question of the jurisdiction of the courts of admiralty. It was passed by congress under the commercial clause of the constitution, and authorizes continuous lines of railroads from one state to another state, and thus secures interstate commerce against obstacles, even if attempted by state action; and was not intended to deprive courts of admiralty of any jurisdiction which they otherwise had. The question of jurisdiction is to be considered without regard to this section of the statutes. The Mississippi river is within the jurisdiction of courts of admiralty; and as the St. Louis is a large boat, propelled by steam across that river from one state to another, it would seem there can be no doubt this case is within admiralty jurisdiction. It may be, in cases like the one at bar, there is no especial need for the lien of seamen for their wages, and that commerce between the states does not need the aid of liens in favor of the crew of steamers running over or across the public navigable waters from one state to another; but this need is not the test of the admiralty jurisdiction, or of maritime liens. A recent author, Mr. Henry, states the matter thus:

"But later cases seem to extend the scope of admiralty jurisdiction to all classes of vessels used in commerce or navigation, without regard to the necessity for such liens arising in order to enable them to conduct the voyage." Henry, Adm. p. 91.

It has been decided that the crew of an ordinary ferry-boat running across a river, and within the same state, have a maritime lien. *Murray* v. *Ferry-Boat*, 2 Fed. Rep. 86. See, also, *The Cheeseman* v. *Two Ferry-Boats*, 2 Bond, 363; *The Gate City*, 5 Biss. 200. In the case of *The Volunteer*, 1 Brown, Adm. 159, it was held that an admiralty court had jurisdiction in a collision between two tug-boats which were employed in harbor service in the same harbor, and within the body of the same county, but as links of transportation in interstate commerce.

The answer of the defendant sets out the attachment of the wages claimed by the libelant by process of garnishment, and a judgment thereon by J. P. Pollock, a justice of the peace in and for the state of Kentucky, and a subsequent payment thereof by the defendant. The sums thus paid are pleaded by defendant as a bar to any recovery by libelant in this suit, as they cover the whole amount of his wages. It appears from the record of the proceedings in the justice's court the libelant was before the court by actual service of the summons, but that neither he nor the defendant set up the character of libelant's claim, and

claimed an exemption from the attachment because of the nature of the wages due. The libelant now insists that his wages are not subject to an attachment from a court of law, and that the justice of the peace was without jurisdiction to render the judgment he did, and his counsel calls the attention of the court to the 4536th section of the Revised Statutes. That section declares that "no wages due or accruing to any seaman or apprentice shall be subject to attachment or arrestment from any court; and every payment of wages to a seaman or apprentice shall be valid in law, notwithstanding any previous sale or assignment of wages, or of any attachment, incumbrance, or arrestment thereon." This language is similar to that used in the English statutes of 17 & 18 Vict., and is taken from the act of congress passed June 7, 1872, which is entitled "An act to authorize the appointment of shipping commissioners by the several circuit courts of the United States to superintend the shipping and discharging of seamen engaged in merchant ships belonging to the United States, and for the protection of seamen," and is placed in the Revised Statutes under the head of "Merchant Seamen." Many of the provisions of the act of June 7, 1872, do not apply to vessels navigating the western rivers; but section 61, which is the same as section 4536, Rev. St., is under the head of "Protection of Seamen;" and section 65 of said act provides "that, to avoid doubt in the construction of this act, any person having the command of any ship belonging to any citizen of the United States shall, within the meaning and for the purposes of this act, be deemed and taken to be 'masters of such ship,' and that every person (apprentices excepted) who shall be employed or engaged to serve in any capacity on board of the same shall be deemed and taken to be a 'seaman,' within the meaning and purposes of this act; and that the term 'ship' shall be taken and understood to comprehend every description of vessel navigating on any sea or channel, lake or river, to which the provisions of this law may be applicable." This section is re-enacted in Rev. St. § 4612.

The court in *Ross* v. *Bourne*, 14 Fed. Rep. 859, in considering section 61 of the act of 1872, says: "This provision is general in its terms, and is applicable to all wages earned by seamen, whatever the nature of the voyage." I conclude the present case is within its provisions, and that libelant's wages could not be attached by the process of garnishment issued from a common-law court. Whether these wages could have been thus subjected, in the absence of a prohibitory statute, is a most interesting question, which has been most ably and learnedly discussed by Justice GRAY, then chief justice of Massachusetts supreme court, on the one side, and by Judge BENEDICT on the other. See *Eddy* v. *O'Hara*, 132 Mass. 56, and *McCarty* v. *The City of New Bedford*, 4 Fed. Rep. 818. But this court need not express an opinion on this mooted question, as we think the statute covers the case.

It seems from the record filed of the proceedings before the justice of the peace that libelant was before him by actual service of the summons, and these wages have been in fact paid by the defendant, and applied to the payment of libelant's debts. These debts of his are presumably

just debts, and I do not find that he made any question before the justice as to the right of attachment and the application of his wages to the payment of his debts. He should have made the question before the justice, and, if decided against him, appealed the case to a higher court. He did not do this, but allowed the defendant to pay the wages due him under the order of the state court, and apply the money to the payment of his presumably just debts. It would be inequitable, under such circumstances, to require defendant to pay these wages a second time. *The City of New Bedford*, 20 Fed. Rep. 57.

It appears from the record that proceedings were commenced before the commissioner of this court on the 30th of January, 1891, and that the defendant had actual notice of this proceeding before the judgment was rendered by the justice of the peace on the 5th of February. It was the duty of the defendant, under the circumstances, as well as the libelant, to bring to the attention of the state court—justice of the peace—the fact of the proceeding in admiralty. I shall not, therefore, give libelant judgment for the wages which have already been paid by defendant, and applied to libelant's just debts, but will give libelant a judgment for the costs of the admiralty proceedings; and it is so ordered.