STEBBINS *et al. v.* FIVE MUD-SCOWS.

(*District Court, S. D. New York.* April 1, 1892.)

1. SALVAGE—ELEMENTS OF—PREVENTION OF DAMAGE TO PROPERTY OF OTHERS.
   When a vessel has gone adrift through negligence, and is drifting towards other vessels, which she is likely to injure, the saving of her owners from liability to pay any such damage as was likely to arise, and which the owners would be called on to pay, should be taken into account in determining the amount of a salvage award.

2. SAME—AWARD.
   Seven hundred and fifty dollars salvage awarded a tug worth $15,000 for picking up five scows worth $30,000, which had negligently got adrift in the Harlem river, and were liable, by collisions, to injure other property.

In Admiralty. Libel for salvage.
*Wilcox, Adams & Green,* for libelant.
*A. A. Wray,* for claimant.

BROWN, District Judge. On May 26, 1891, five loaded mud-scows broke adrift from the bulk-head where they were moored, between 115th and 116th streets, Harlem river, between 6 o'clock and 7 P. M., and went drifting upwards with the slow current at the beginning of the flood-tide. Some little time afterwards, estimated by two or three of the witnesses to be half an hour, a powerful steam-tug, the Archibald Watt, going up the river to lay up for the night, discovered the scows adrift between 117th and 118th streets, made fast to them, and towed them back to the bulk-head at 114th street, where they were tied up a little after 9 P. M. The scows were worth $6,000 each, in all $30,000; the Watt, $15,000. No special difficulty or danger attended the work, excepting that the channel of the river was very narrow; the scows were more or less kinked up, and very heavy; and the handling of them was attended with some danger to vessels going up and down the river in so narrow a channel. The small tug Curtis was going up the Harlem at the same time with the Watt; her pilot saw the scows adrift and made

for them; but as the Watt reached them first, the Curtis made no claim to assist. She was a much smaller tug than the Watt, and could not, I think, have handled the five scows together. Had the scows not been picked up by the Watt, I think there is no doubt that they would have come in collision with the United States steamer Azalia, worth $90,000, which ran some 40 feet beyond the end of the long projecting wharf at the end of 119th street. Further above, the scows would also have been likely either to run upon Negro rocks off 122d street, or upon the yachts above. It is not probable, however, that from merely grounding without collision, the scows would have suffered any great damage. For the claimants it is said upon the authority of *The Baker*, 25 Fed. Rep. 771, that the risk of inflicting loss on others is not to be taken as an element in fixing a salvage allowance. That is undoubtedly true, but it is not applicable here. The observations of the court in that case had reference to the existing facts, namely, that the danger of communicating fire to other vessels from the fire on board the vessel saved, was a danger not arising through any fault of the latter vessel. The owners of the saved vessel could not, therefore, have been called on to pay any such damage to others. In the present case, the presumption is to the contrary. It is impossible to suppose that five barges could break adrift from a bulk-head in the Harlem river in mild weather at the beginning of the flood-tide, which was so weak as not to drift them above two blocks in nearly half an hour, except under very insufficient and negligent mooring; and the scows and their owners would have been liable, therefore, for any damage inflicted on other persons through breaking adrift. The rescue of the scows, therefore, saved the owners from any such damage as they might have been called upon to pay; and anything thus saved is as much a pecuniary benefit to the owners of the scows as the saving of any damage to the scows themselves. It is not the loss to other persons that is considered, but the saving to the owners themselves. Although this saving is not a matter of precise calculation, yet as collision was a very certain danger, it is one of the elements which under such circumstances is proper, I think, to be taken into account. In view of all the circumstances, I think that a salvage allowance at the rate of $150 per scow or $750 for the five scows, will be a reasonable award; one-third of which should go to the officers and men, in proportion to their wages; and two-thirds to the tug. A decree may be entered accordingly, with costs.