## THE PREMIER.

### THE WILLAMETTE

NELSON v. THE PREMIER and THE WILLAMETTE, (REESE et al., Interveners.)

(District Court, D. Washington, N. D. February 5, 1894.)

1. COLLISION—INJURIES TO PASSENGERS—LIABILITY.
   A steamer guilty of culpable negligence contributing to a collision is liable for resulting injuries to passengers on the other vessel, although it, also, may be guilty of fault contributing to the disaster.

2. SAME—FOG—EXCESSIVE SPEED.
   A steamer which deviates from her proper course and continues at full speed in a fog, notwithstanding the known proximity of another vessel, as indicated by her fog horn, is guilty of fault when collision ensues.

3. SAME—DEATH OF PASSENGERS—SUIT BY PERSONAL REPRESENTATIVES — ADMIRALTY JURISDICTION.
   The personal representatives of passengers killed in a collision can maintain a suit in admiralty in a federal court against the vessel in fault, when the local law gives them a right of action, and makes the damages a lien on the vessel, as in Washington by 1 Hill's Code, § 1678, and 2 Hill's Code, §§ 138, 148.

In Admiralty. Suit in rem to recover damages for personal injuries to passengers, resulting from a collision of the steam collier Willamette with the passenger steamer Premier. Findings and decree for libelants.

John H. Elder and A. R. Titlow, for libelant.

A. H. Garretson, John H. Elder, A. R. Titlow, Crowley & Sullivan, Stratton, Lewis & Gilman, and Ben Sheeks, for intervening libelants.

A. F. Burleigh, for claimant.

HANFORD, District Judge. This is a suit in rem by passengers who were injured, and personal representatives and heirs of passengers who were killed, by a collision between the passenger steamer Premier and the steam collier Willamette on Admiralty inlet, about midway between Marrowstone point and Bush point. The Premier is a steel propeller, and was, at the time of the collision, plying as a regular passenger steamer on the route from Tacoma to Whatcom, via Seattle, Port Townsend, and Anacortes. The Willamette is an iron propeller, built for the coal trade, and was, at the time of the collision, bound from Seattle to San Francisco with a cargo of about 2,700 tons of coal.

The collision occurred at 2:05 P. M., October 8, 1892. Admiralty inlet is wide. No other vessels or obstructions impeded either of the colliding vessels. The sea was smooth. The machinery of each vessel worked well, and both were in all respects properly equipped and easily controlled. And, although fog hung over the place and enveloped both vessels at the time of the occurrence, the collision could not possibly have happened if due care, and the rules prescribed by law for the prevention of collisions, had been observed by the commanders of both vessels. The Premier has not been arrested or brought within the jurisdiction of the court. I shall therefore, in this decision, refrain from expressing any opinion upon the question as to whether she was in fault. If the collision was caused by culpable negligence on the part of Willamette, she is liable for resulting injuries to passengers of the Premier, notwithstanding any fault on the part of the latter which may have been a contributing cause of the same injuries. The Atlas, 93 U. S. 302.

From the testimony of the Willamette's officers, I find that she left Seattle at 10:50 A. M. in a thick fog. When off West point she was overtaken and passed by the passenger steamer City of Kingston, bound from Seattle to Port Townsend. She passed Point-no-Point at 1:10 P. M., and from that time until the moment of the collision her engines were working full speed, or nearly so. I do not accept as true the statements of her officers as to the course of the Willamette from Point-no-Point to the place of the collision. I find, according to the preponderance of all the evidence, that the Willamette took a course from Point-no-Point which brought her very near to Bush point, on the east side of the inlet. A few minutes before the collision she was actually seen by persons residing there. The Premier was then around Marrowstone point, and had passed the Kingston, and was heading S. E. ¾ E., which was her proper course. Being in the fog, she was sounding one blast of her whistle at frequent intervals, and said signals were heard on board of the Willamette, and also by people on Bush point. The Willamette, instead of pursuing her proper course, keeping on the east side of the inlet, deviated to the westward, and took a course aimed with fatal accuracy toward the approaching Premier. The master of the Willamette, in his testimony, swears that when he heard the Premier's whistle he

mistook her for the City of Kingston, and it is altogether probable that he changed the course of the Willamette with the intention of following in the Kingston's wake, and that, on account of his stupidity or perversity he failed to discover that the vessel whose notes of warning were constantly sounding was approaching, instead of being overtaken. It is proven by the testimony of the assistant engineer in charge of the Willamette's engine room at the time of the occurrence that the first and only order occasioned by the meeting was, "Astern full speed," and this he has recorded as being given at 2:05,—the very moment of the collision. The Willamette rammed the Premier at an angle of about 45 degrees on her port side, just abaft the foremast, with such force as to cut into her hull nearly or quite to the latter's keel; the Willamette's bow being so firmly wedged into the structure of the Premier as to render her unable, by her own efforts, to pull away. After towing the Premier across the inlet to the beach near Bush point, and making her fast to the shore, her repeated efforts to back away and separate from the Premier resulted in parting a hawser, and still the two vessels remained united, until, with the assistance of a tug, the Willamette was finally liberated, and the Premier sunk. The Willamette was in fault for deviating from her proper course, and for continuing at a dangerous rate of speed, when the near proximity of another vessel was in fact known to her officers, instead of stopping until the position and course of the other vessel had been made out, and proper signals for passing had been given and understood by both vessels, as the law prescribes.

As the direct result of this casualty, John E. Moe, who is represented in this suit by Philip L. Reese, as administrator of the estate of said Moe; Frank C. Wynkoop; W. N. Richardson, who is represented in this suit by his widow, Ida F. Richardson; and Joseph Rankin,—were killed, and Jacob Nelson, Emma B. Miller. D. J. Wynkoop, E. W. Vest, and Thomas Foran suffered personal injuries; all of said deceased and injured persons being passengers on board the Premier.

The statutes of this state provide as follows:

"When the death of a person is caused by the wrongful act or neglect of another, his heirs, or personal representatives may maintain an action for damages against the persons causing the death. * * *" 2 Hill's Code. § 138.

"A father, or in case of his death or desertion of his family the mother, may maintain an action as plaintiff for the injury or death of a child, and a guardian for the injury or death of his ward." Id. § 139.

"No action for a personal injury to any person occasioning his death shall abate, nor shall such right of action determine by reason of such death if he have a wife or child living, but such action may be prosecuted, or commenced and prosecuted, in favor of such wife, or in favor of the wife and children, or if no wife, in favor of such child or children." Id. § 148.

"All steamers, vessels, and boats, their tackle, apparel, and furniture, are liable: * * * 6. For injuries committed by them to persons or property within this state, or while transporting such persons or property to or from this state. Demands for these several causes constitute liens upon all steamboats, vessels, and boats, and their tackle, apparel, and furniture, and have

priority in their order herein enumerated, and have preference over all other demands; but such liens only continue in force for the period of three years from the time the cause of action accrued." 1 Hill's Code, § 1678.

Upon the authority of the decision of Judge Deady, in the case of The Oregon, 45 Fed. 62, and the apparent approval thereof by the supreme court of the United States in the case of The Corsair, 145 U. S. 335, 12 Sup. Ct. 949, I hold that the rights conferred by these statutes are available to the representatives of the deceased passengers above named in this suit. The injuries to the passengers who are parties to this suit are all of a serious character, but the evidence does not convince me that the disabilities existing at the time of taking the proofs are certain to be permanent. I believe that all will, as soon as their claims for damages are settled, regain health so far as to be able to pursue their former avocations. Therefore, in awarding them damages, I have not allowed for permanent disabilities. I award damages to the libelant and the several interveners, as follows: To the libelant, Jacob Nelson, for personal injuries sustained by himself, $2,500; to the intervener Philip L. Reese, for the death of John E. Moe, $5,000; to the intervener Emma B. Miller, for the injuries sustained by herself, $2,500; to the interveners D. J. Wynkoop and Ella E. Wynkoop, for the death of their son, Frank C. Wynkoop, $3,500; for the injuries sustained by D. J. Wynkoop, $2,500; for the injuries sustained by Ella E. Wynkoop, $1,000; for loss and injury to baggage and property, $300; to the intervener E. W. Vest, for the injuries sustained by him, $700; to the intervener Thomas Foran, for the injuries sustained by him, $3,500; to the intervener John Rankin, for the death of his son Joseph Rankin, $3,500; and to the intervener Ida F. Richardson, for the death of her husband, W. N. Richardson, $5,000.