### LAWRENCE et al. v. FLATBOAT.

(District Court, S. D. Alabama. December 27, 1897.)

1. MARITIME LIENS—ADMIRALTY JURISDICTION.
   A flatboat, with a pile driver and its engine erected thereon, which is mainly used in constructing bulkheads for the erection of channel lights, and which is also employed in transporting materials used in the work (being towed by a tug for this purpose), is to be classed as a "vessel," within the maritime jurisdiction, and subject to maritime liens.

2. SAME—SEAMEN'S WAGES.
   Persons employed upon such a boat, who assist in moving her about, and who also work the pile driver and are engaged in constructing the bulkhead, are to be regarded as rendering maritime services, so as to give them a lien on the vessel for their wages.

This was a libel in rem by Millard T. Lawrence and others against an unnamed flatboat or pile driver, of which the Southern Log-Cart & Supply Company are claimants.

Sheldon & Burgett and W. D. McKinstry, for libelants.
Gregory L. & Harry T. Smith, for claimant.

TOULMIN, District Judge. The libel is to recover a balance of wages due libelants for services on the said flatboat. The boat had erected on her a pile driver, which was used in driving piling in the construction of bulkheads on which to erect channel lights along the channel of Mobile Bay for the guidance of vessels navigating the bay. She was also provided with an engine aboard, with which to operate the pile driver. The business of the boat was to transport the material used in constructing the bulkheads from the city of Mobile to the several points in the bay along the channel where such material was to be used,—some 25 miles distant from said city,—but mainly to drive the piling in the construction of the said bulkheads. The boat was without rudder, sails, or other means of propulsion, and was towed from the city of Mobile to the bay, and from the bay to the city, when going with and returning for said material; but when moving about the bay from one place to another, where the work was being done, she was propelled by a rude sail and rudder, improvised for the purpose, and sometimes by the use of anchors, windlass, and rope, using the engine on board for the purpose of operating the windlass. The libelant Maynard was the engineer of the boat, and his services were rendered in operating the engine for navigation, when necessary, and in operating it when employed in driving piling. The services of the other libelants were rendered in the special business of the boat,—loading her with the material transported by her, assisting in moving her from place to place about the bay, so far as mov-

ing was necessary, but mainly in driving the piling and constructing the bulkheads referred to.

The learned judge who decided the case of The Alabama, reported in 22 Fed. 449, in speaking of the case of the floating elevator (The Hezekiah Baldwin, 8 Ben. 556, Fed. Cas. No. 6,449), said:

"The elevator was capable of being, and its business required it to be, navigated from one place to another. When in place and in operation, it lifted grain and placed it aboard another water craft to be transported. Exactly the same may be said of the dredgeboat Alabama, except that it lifted mud instead of grain. Each aided commerce,—the one by loading grain in transit, the other by removing obstructions in the way of commerce by water."

So it was held that the dredgeboat and scows used in connection therewith were within the admiralty jurisdiction, and subject to a lien for towage. It seems to me that the flatboat in this case should likewise be classed as a vessel, rendering service in aid of commerce. She was capable of being navigated, and her business required her to be navigated, from one place to another. When at work she drove piling and constructed bulkheads for the erection of lights to mark the channel of the bay, in aid of navigation and commerce. Dredges and scows, though never used in the transfer of passengers or freight, and furnished with no motive power of their own, are vessels, and subject, as such, to maritime liens for service rendered. The Alabama, 19 Fed. 544. A dredge is subject to libel in admiralty for wages. The Atlantic, 53 Fed. 607, The Starbuck, 61 Fed. 502. In the case of The Atlantic it was held that an engineer on a steam dredge, chartered for work on a government contract, is entitled to a lien for wages. The dredge was engaged in dredging water ways near Charleston, S. C. In the case of The Minna, 11 Fed. 759, Judge Brown says "that all hands employed upon a vessel, except the master, are entitled to a lien if their services are in furtherance of the main object of the enterprise in which she is engaged." It is also held that the lien is not limited to acts done for the benefit of the ship, or in the actual performance of seamen's duties. Ringgold v. Crocker, Abb. Adm. 344, Fed. Cas. No. 11,843; Reed v. Canfield, 1 Sumn. 195, Fed. Cas. No. 11,641. Any service is maritime if substantially to be performed on water within the ebb and flow of the tide. The D. C. Salisbury, Olcott, 71, Fed. Cas. No. 3,694. See, also, Rev. St. U. S. § 4612. In Saylor v. Taylor, 23 C. C. A. 343, 77 Fed. 476, it is held that if the craft comes within the maritime jurisdiction the persons employed aboard of her come also under that jurisdiction. In the case of The Destroyer, 56 Fed. 310, it is said that, "to entitle one to a lien for wages against a vessel, it is not necessary that the services be rendered in navigation alone; that where the services are rendered in the special business of the vessel, in moving her about, so far as moving was desired, but mainly in operating her machinery for throwing projectiles, which was her sole business, the men who rendered the services are entitled to a lien upon the vessel for wages." According to the decided weight of authority, a craft used as the flatboat, with pile driver, in this case was used, should be classed as a vessel, and subject to a maritime lien for seamen's wages. The proctor for claimant practically concedes this proposi-

tion, but his contention is that the libelants were not seamen, and performed no, or but little, maritime service on the boat. He claims that the primary object of libelants' employment was the erection of bulkheads upon which the channel lights were placed; that the moving of the boat from place to place was only incidental to the work of erecting the bulkheads; and that such work was not maritime in its character, and created no lien upon the vessel. While it is true that the navigation of the boat from place to place in the bay was only incidental to the work of erecting the bulkheads, which was the main object of her employment, and of the employment of the hands upon her, I cannot agree with the able proctor in the conclusion that the work done and the services rendered were not maritime in their character and created no lien upon the vessel. The work done by the vessel related to and was an aid to navigation and commerce, and the services rendered by the libelants were rendered in the special business of the vessel and in furtherance of the work in which she was engaged. In the case of The Minna, supra, Judge Brown says that "the earlier cases indicate that mere landsmen have no lien unless their labors contribute to the preservation or navigation of the ship, or to the sustenance or health of the crew"; but he considers the better rule to be; and he holds, "that all hands employed upon a vessel, except the master, are entitled to a lien if their services are in furtherance of the main object of the enterprise in which she is engaged." My opinion is that the libelants have a lien for their wages which is enforceable in admiralty. A decree will accordingly be entered in favor of libelants.