McRAE v. BOWERS DREDGING CO.

(Circuit Court, D. Washington, W. D.    March 31, 1898.)

1. EQUITY JURISDICTION—INSOLVENT CORPORATION—EXISTING LIENS.
   When a court of equity takes control and custody of the assets of an insolvent corporation, it does not destroy existing liens, but assumes the burden of protecting the rights of all parties. It will not surrender the property in its custody, to be disposed of by other courts, but will, when necessary, order a sale of the assets, and distribute the funds.

2. DREDGING VESSEL—MARITIME LIEN.
   A dredge designed to facilitate navigation, to be used in deepening harbors and channels, and removing obstructions from navigable rivers, and to bear afloat heavy machinery for that class of work, may become subject to a maritime lien.

3. SAME—WAGES OF CREW.
   The services of the engineer, firemen, deck hands, and captain, who work on board a dredging vessel, the mechanics employed in keeping the machinery in repair, the pipe men engaged in laying, connecting, and moving the lines of pipe, and the laborers engaged upon and about the filled area, are required in the prosecution of the work in which the vessel is employed, and they have maritime liens for wages.

4. SAME—PERSONS ENTITLED TO LIENS.
   The right to claim a maritime lien for wages is not restricted to mariners who serve the ship with peculiar nautical skill, but extends to all whose services are in furtherance of the main object of the enterprise in which the ship is engaged.

5. SAME—COAL.
   Where coal was furnished to dredging vessels on the orders of the manager of the company owning the vessels, and was necessary to enable the dredgers to do their work, and where the manager did not have means to

procure the coal, except upon the credit of the dredgers, this raises a conclusive presumption of the necessity for using the credit of the vessels.

6. SAME—APPORTIONMENT OF LIEN.

Where persons were employed on, and coal furnished, two or more vessels, and the evidence shows the time which each man devoted to the service of each vessel, and the amount of coal used on each, the amounts will be fairly apportioned between the vessels.

7. SAME—STATE LAW CREATING LIEN.

2 Ballinger's Codes & St. Wash. § 5953, which provides that "all steamers, vessels and boats, their tackle, apparel and furniture, are liable," etc., creates liens upon ships and vessels for services, supplies, and work done and furnished within the state, without regard to the residence of the owners of the vessels.

Hudson & Holt, for plaintiff.

T. D. Powell, for receiver.

Thomas Burke, L. C. Gilman, S. H. Piles, Gorham & Gorham, Ira Bronson, and Geo. E. De Steigueh, for interveners.

HANFORD, District Judge. The defendant is an insolvent corporation, and its property and business are in the hands of a receiver appointed by this court, upon the petition of the complainant, with the acquiescence of the defendant. The property which has come under control of the receiver consists chiefly of patent rights, including the right to own and operate, within certain territory, vessels, machinery, and apparatus for dredging, constructed according to plans and specifications covered by the several patents granted to Alphonso B. Bowers; also, the dredgers Anaconda and Python, with their machinery and equipments. During the years 1895, 1896, and 1897, the defendant was engaged in operating said dredgers in the harbor of Seattle, cutting water ways and filling tide flats, under a contract with the Seattle & Lake Washington Water-Way Company, a corporation which has undertaken to fill a large area of tide flats, and in connection therewith to cut and deepen water ways across said area, and to cut and construct a ship canal, with a lock, to connect Lake Washington with said water ways; said improvements being authorized by a contract made and entered into by the state of Washington with the water-way company. The defendant, under its contract, during the time it was engaged in said work, dredged a water way more than 2,500 feet in length, 500 feet wide, and with a depth of water of 26 feet at low tide, and, with the material excavated by dredging said water way, filled in and made from 75 to 100 acres of land; covering a space theretofore submerged except at low tide. In doing said work the defendant contracted debts for necessary supplies and materials, for repairs to its vessels and machinery, and for wages earned by the men employed in operating the dredgers, and handling the pipes by which the material taken from the water ways was conducted to the filled area. The Anaconda and Python are vessels designed to operate afloat, and to navigate from place to place where their services may be required in dredging and deepening rivers, harbors, and water ways. Before coming to Seattle, they have each been employed at other distant places, and have made voyages by being towed upon the Pacific Ocean. Their machinery consists of rotary cutters, for digging in mud and sand

beneath the water; and centrifugal pumps, by which the sand, mud, and material loosened up by the rotary cutters, and drawn up in a state of solution, is forced through lines of pipe to places of deposit; and engines for driving the cutters and pumps. The interveners are all creditors of the defendant, and by their petitions seek to have their claims adjudicated, and payment thereof decreed to be made out of the proceeds of the assets in the hands of the receiver. Some of them allege that they extended credit to the dredgers for supplies and materials necessary for their use in the business in which they were engaged, and for repairs; and others allege that they have earned wages, as engineers, firemen, and deck hands, in operating the dredgers and the machinery connected therewith, and in doing work necessary in watching and handling the pipes used in connection with the dredgers. All of these interveners claim to have maritime liens upon the dredgers and their equipments for the amounts due to them, respectively, and that the dredgers and their equipments, if not in the custody of the receiver, would be subject to process in suits which might be prosecuted in admiralty to enforce their alleged liens; and for these reasons they ask this court to allow their claims as preferential debts to be paid out of the proceeds to be derived by sale of the dredgers and their equipments. When a court of equity takes control and custody of the assets of an insolvent corporation, it does not assume to destroy existing liens, or to devest the rights of lien creditors. The court assumes the burden of protecting as far as may be the rights of all parties having interests. Therefore it will not surrender property in its custody, to be disposed of under process from other courts, but will, when necessary to enable creditors to collect their dues, order a sale of the assets, and distribute the funds according to the rights and priorities of the owners and creditors. Pratt v. Coke Co., 168 U. S. 259, 18 Sup. Ct. 62; In re Scott, Fed. Cas. No. 12,517; In re People's Mail Steamship Co., Id. 10,970. Therefore I hold that the interveners have a standing in this court to assert their claims, and, if they succeed in establishing maritime liens, they should be paid from the proceeds in preference to the general creditors of the defendant corporation.

The main question in the case is whether the dredgers are vessels subject to admiralty process, whether the work which they were doing was a maritime service, whether the contracts under which they were supplied and kept in repair are maritime, and whether their crews have maritime liens for their wages. The writers and judges who have expounded maritime laws, and the rules by which the jurisdiction of admiralty courts must be measured, have not succeeded in making known any satisfactory test by which floating structures which are subjects of admiralty jurisdiction, and to which maritime liens may attach, may be distinguished from those which have no place in the realm of maritime jurisprudence. There are numerous decisions which tell that adaptability to float on the water, masts, sails, propelling machinery, steering apparatus, capacity for carrying merchandise or passengers, and mobility, are features by which a subject of admiralty jurisdiction may be recognized; but the decisions are not all con-

sistent with any guiding principle which makes admiralty juris-
diction depend upon the size or shape of a vessel, her means of
propulsion, or her adaptability for use. According to the decisions,
a ship, although afloat, is not a ship if her original construction,
rigging, and furnishing remain incompleted. Men employed on
board of a vessel for her preservation do not acquire maritime liens
for their wages if she is out of commission; that is, if she has
no voyage in contemplation. A ship is not employed in a mari-
time service when used merely as a warehouse to hold her cargo
after the completion of a voyage, and while navigation is suspend-
ed. The actual employment of a structure designed for use in the
transportation of merchandise or passengers by sea is not under all
circumstances conclusive. Wharves and warehouses are necessary
for the transportation and preservation of merchandise to be car-
ried in ships to a distance, and yet such structures, although in
fact instruments of commerce and aids to navigation, are not mar-
itime vessels. Floating dry docks, used in the repair of vessels, are
not maritime things. On the other hand, a private yacht or pleasure
boat, not designed for nor employed in trade or commerce, is a vessel
which may be a subject of admiralty jurisdiction. The width of a
stream or the length of a voyage is no criterion by which to determine
the character of the service, nor the question of admiralty jurisdiction.
Neither will jurisdiction of a floating structure be denied by a court of
admiralty because it does not carry masts, propelling machinery, or
steering apparatus, or lacks accommodations for a crew. There is
great confusion in the decisions as to whether particular structures,
such as pile drivers, wharf boats, rafts, and dismantled vessels, are to
be classed within or without the pale of admiralty jurisdiction.
The following is a list of cases in which the jurisdiction has been
sustained over a great variety of floating structures, including a
floating elevator, a harbor tugboat of less than five tons, a scow,
a canal boat used only upon an artificial canal wholly within one
state, a barge without masts, sails, propelling machinery, rudder
or anchor, a ferry boat, a steam derrick boat, a floating boat house,
a floating bath house, a pile driver, a dredger, and a raft of tim-
ber: 1 Am. & Eng. Enc. Law (2d Ed.) p. 255; The Cheeseman v.
Two Ferry Boats, Fed. Cas. No. 2,633; The Dick Keys, Fed. Cas.
No. 3,898; The E. M. McChesney, Fed. Cas. No. 4,463; Id., Fed. Cas.
No. 4,464; Fifty Thousand Feet of Timber, Fed. Cas. No. 4,783;
The Florence, Fed. Cas. No. 4,880; The Gate City, Fed. Cas. No.
5,267; The General Cass, Fed. Cas. No. 5,307; The Hezekiah Bald-
win, Fed. Cas. No. 6,449; The Kate Tremaine, Fed. Cas. No. 7,622;
Maltby v. Steam Derrick Boat, Fed. Cas. No. 9,000; Raft of Spars,
Fed. Cas. No. 11,528; The W. J. Walsh, Fed. Cas. No. 17,922;
Malony v. City of Milwaukee, 1 Fed. 611; Murray v. The F. B. Nimick,
2 Fed. 86; Endner v. Greco, 3 Fed. 411; The Old Natchez, 9 Fed.
476; U. S. v. One Raft of Timber, 13 Fed. 796; Muntz v. Raft of
Timber, 15 Fed. 555, 557; The B. & C., 18 Fed. 543, affirmed in Ex
parte Boyer, 109 U. S. 629–632, 3 Sup. Ct. 434; The Alabama, 19
Fed. 544; Id., 22 Fed. 449; The Ella B., 24 Fed. 508; The Murphy
Tugs, 28 Fed. 429; The Pioneer, 30 Fed. 206; Woodruff v. One Cov-
ered Scow, 30 Fed. 269; Disbrow v. The Walsh Bros., 36 Fed. 607;

Aitcheson v. The Endless Chain Dredge, 40 Fed. 253; Coasting Co. v. The Commodore, 40 Fed. 258; Seabrook v. Raft of Railroad Cross-Ties, 40 Fed. 596; Bywater v. Raft of Piles, 42 Fed. 917; The City of Pittsburgh, 45 Fed. 699; The Progresso, 46 Fed. 292; The St. Louis, 48 Fed. 313; The Wilmington, 48 Fed. 566; Stebbins v. Five Mud Scows, 50 Fed. 227; Id., 12 C. C. A. 359, 64 Fed. 495; The Atlantic, 53 Fed. 607; The Starbuck, 61 Fed. 502; The Public Bath No. 13, 61 Fed. 692; Saylor v. Taylor, 23 C. C. A. 343, 77 Fed. 476; The International, 83 Fed. 840; Lawrence v. Flatboat, 84 Fed. 200; Ex parte Easton, 95 U. S. 68–78. A dredging vessel, designed to facilitate navigation, by going from place to place, to be used in deepening harbors and channels, and removing obstructions from navigable rivers, and to bear afloat heavy machinery and appliances for use in that class of work, may commit, or be injured by, a marine tort, and she may become subject to a maritime lien for salvage. She has mobility, and her element is the water. She can be used afloat, and not otherwise. She has carrying capacity, and her employment has direct reference to commerce and navigation. I perceive no reason for exempting such a vessel from the liabilities arising from nonpayment of the wages of her crew, or from such unfulfilled contracts as would subject other vessels to liens enforceable by a court of admiralty.

I find no difficulty in pronouncing in favor of the engineers, firemen, deck hands, and captains who worked on board of the dredgers. They have maritime liens for the balances due to them for wages. The captains were not clothed with the authority of masters, but were simply foremen in charge of the working crews. Therefore the rule that the master of a vessel has no lien for wages does not apply to them. Those who worked as general mechanics in keeping the machinery in repair, and the pipe men, who attended to laying, connecting, and moving the lines of pipe, and those who performed necessary labor upon and about the filled area, are also entitled to liens. Their services were required in prosecution of the enterprise in which the vessels were employed. The right to claim a lien for wages under the general maritime law is not restricted to favor only mariners who serve the ship with peculiar nautical skill, but extends to all whose services are in furtherance of the main object of the enterprise in which the ship is engaged. The Minna, 11 Fed. 759; The Ocean Spray, Fed. Cas. No. 10,412. It is true that some of the men worked upon and in connection with both vessels, and the law does not admit of a lien upon one vessel for wages earned in service upon a different vessel; but the evidence shows with approximate accuracy the time which each man devoted to the service of each vessel, and the amounts can be fairly apportioned.

All of the coal consumed by both vessels while engaged in the work was purchased of the intervener C. J. Smith, as receiver of the Oregon Improvement Company. The evidence shows that the defendant is a corporation organized under the laws of the state of Illinois. Its president and general officers, except a general manager, were not inhabitants of this state, and it had no general office in this state while the work referred to was being done.

The coal was furnished upon the request of the general manager, and was delivered in scows, from which it was received on board the dredgers as required for use. The evidence shows the average daily consumption of each of the dredgers, and the number of hours each was in operation; and from this data a close estimate of the amount supplied to each can be ascertained, and a fair apportionment made, so that the liens upon each vessel will not be for a greater amount than the price of the coal which she consumed. Five thousand dollars is claimed as a set-off for work done by the dredgers in front of a wharf owned by the Oregon Improvement Company in Seattle harbor. The receiver has allowed a credit of $4,000 for this work, and I find from the evidence that this amount is full compensation for the service of the dredgers under the contract which the defendant made with Receiver Smith. It is earnestly contended in opposition to the demand of this intervener that the evidence is insufficient to prove that there was necessity for purchasing supplies of coal upon the credit of the dredgers, and that without such necessity there can be no lien. The proof is ample to show that the supplies were ordered by the general manager of the defendant corporation, that such supplies were necessary to enable the dredgers to do their work, and that the general manager did not have money to pay for or means to procure said supplies, otherwise than upon the credit of the dredgers. This evidence is sufficient to raise a conclusive presumption of necessity for using the credit of the vessels. The Grapeshot, 9 Wall. 129–145; The Lulu, 10 Wall. 192–204.

The claims to liens for wages and for supplies and repairs are founded, not only upon the general maritime law, but also upon a statute in force in this state, which provides that:

"All steamers, vessels and boats, their tackle, apparel and furniture, are liable: (1) For services rendered on board at the request of or on contract with their respective owners, masters, agents, or consignees. (2) For supplies furnished in this state for their use at the request of their respective owners, masters, agents, or consignees. (3) For work done or material furnished in this state, for their construction, repair, or equipment, at the request of their respective owners, masters, agents, consignees, contractors, subcontractors, or other person or persons having charge in whole or in part of their construction, alteration, repair, or equipment." 2 Ballinger's Codes & St. Wash. § 5953.

From the evidence and stipulations of the parties, I find that the claims of C. J. Smith, receiver of the Oregon Improvement Company, the Moran Bros. Company, and P. J. Sullivan, for supplies and materials furnished, and for repairs, come clearly within the letter and spirit of this statute. The power of the legislature to create a lien upon a vessel owned by a nonresident of this state is denied, and a number of decisions have been cited to the effect that the maritime law is not subject to amendment or change either by congress or the legislature of any state. It is well established, however, by repeated decisions of the supreme court, that the state legislatures can create liens upon ships and vessels, and that such liens, when given to secure debts or liabilities cognizable in a court of admiralty, may be enforced by the process of a court of admiralty. See The J. E. Rumbell, 148 U. S. 1–21, 13 Sup. Ct. 498, in which the previous rulings of the supreme court

relating to this subject are reviewed and fully explained. The legislature may confer a right of action, and create a lien for its security; but, when process in rem against a vessel is necessary to give effect to such statutes, the remedy must be sought in a federal court of admiralty jurisdiction. This doctrine is illustrated by the decisions as to the right of the family of a deceased person to sue for damages. The supreme court of the United States has decided that, unless authorized by a statute, a suit in admiralty cannot be maintained to recover damages for a death, caused by a wrongful act or negligence, upon navigable waters within the United States. The Corsair, 145 U. S. 335–341, 12 Sup. Ct. 949. But where by a state statute a right of action is conferred upon the personal representatives of a deceased person, to recover damages for his death, when caused by the wrongful act or negligence or fault of another, if the tort occurred on navigable waters within the state, and a lien is also given upon a vessel in fault, a suit in rem in admiralty can be maintained to recover such damages. 1 Am. & Eng. Enc. Law, pp. 658, 659; The Oregon, 45 Fed. 62; The Willamette, 59 Fed. 797, affirmed in 70 Fed. 874; In re Humboldt Lumber Mfrs. Ass'n, 60 Fed. 428, affirmed in 19 C. C. A. 481, 73 Fed. 239; The Oceanic, 61 Fed. 338, affirmed in 20 C. C. A. 419, 74 Fed. 261. The valid laws of a state, which by their terms are not restricted in their application to property owned by citizens or inhabitants, must be treated as of general application. In the matter of liens upon vessels, it is not ownership within the state which renders the vessel subject to the statute, but the fact of the transaction being within the state. There would be no reason or justice in exempting vessels owned by nonresidents, when employed within this state, from liabilities and burdens imposed upon vessels having resident owners; and there is no provision of the constitution limiting the power of the legislature of a state which can possibly be so construed as to make such exemption of foreign vessels necessary.

I am unable to find from the evidence that the Washington Rubber Company, the Puget Sound Machinery Depot, the Seattle Hardware Company, or the Gutta-Percha & Rubber Manufacturing Company have liens upon either of the vessels, either under the general maritime law or the statute. As to each of these interveners there is a failure of proof to show that the supplies and materials sold to the defendant company were necessary for use in connection with the work of either of the dredgers, or that they were so used. Their demands in the amounts claimed will be recognized as valid debts of the corporation, but not as preferential.

The question of interest will be determined when there are funds to distribute. If the assets should be insufficient to pay all the debts of the defendant, with legal interest, or the contract rate, where there have been promises in writing to pay interest, then each creditor will receive a dividend upon a pro rata distribution of the funds, based upon a computation of the principal amounts.

The payments to be credited against the claim of P. J. Sullivan will be applied as he has shown by his amended petition that he has applied the same.

Attorney fees will be allowed as follows: To National Bank of Commerce, $250; to Merchants' National Bank of Portland, $300; to First National Bank of Portland, $125.

A decree will be entered allowing the claims of all the interveners for the amounts admitted to be due, and directing that the Anaconda and Python be sold separately, and that the debts due to the employés, and to C. J. Smith, the Moran Bros. Company, and P. J. Sullivan, rank as preferred claims against the proceeds for the several amounts which the evidence shows to be properly chargeable against each vessel.