## THE WILLAMETTE.[1]

### OREGON IMP. CO. et al. v. NELSON et al.

(Circuit Court of Appeals, Ninth Circuit. September 18, 1895.)

No. 204.

1. COLLISION—INJURIES TO PASSENGER—LIABILITY OF VESSEL.

A steamer guilty of culpable. negligence contributing to a collision is liable for resulting injuries to passengers on the other vessel, although the latter also may be guilty of fault contributing to the disaster. 59 Fed. 797, affirmed.

2. SAME—FOG—EXCESSIVE SPEED.

A steamer which deviates from her proper course and continues at full speed in a fog, notwithstanding the known proximity of another vessel, as indicated by her fog horn, is guilty of fault in case of a collision between them. 59 Fed. 797, affirmed.

3. SAME — DEATH OF PASSENGERS — SUIT FOR DAMAGES—ADMIRALTY JURISDICTION.

The personal representatives of passengers killed in a collision can maintain a suit in admiralty in a federal court against the vessel in fault, where the collision occurred within the jurisdiction of a state whose laws give a right of action in such case, and makes the damages a lien on the offending vessel. 1 Hill's Code Wash. § 1678; 2 Hill's Code Wash. §§ 138, 148. 59 Fed. 797, affirmed.

4. ADMIRALTY JURISDICTION — DIVISIONS OF DISTRICT—WAIVER OF RIGHTS BY CLAIMANT.

The right of a claimant in a libel in rem to have the suit commenced in the division of the district in which he resides and in which the ship was seized (if any such right he have) is waived by appearing in the suit as claimant, and securing the release of the vessel by giving bond and stipulation, and procuring a transfer of the case to the division of his residence.

5. SAME—INTERVENING PETITIONS—LIABILITY OF SURETIES ON RELEASE BOND.

A stipulation given for the release of a vessel upon a libel to recover damages caused by a collision does not bind the sureties thereon to respond to claims set up by intervening petitions filed subsequently to the release; and the court cannot entertain jurisdiction of such petitions. The Oregon, 15 Sup. Ct. 804, 158 U. S. 186, followed.

Appeal from the District Court of the United States for the Northern Division of the District of Washington.

This libel was filed on the 25th day of October, 1892, in the Western division of the district of Washington, by Jacob Nelson against the steamship Willamette, to recover damages for personal injuries received in a collision between that vessel and the steamship Premier. Process was issued, and the ship was seized by the marshal. On October 29th the Oregon Improvement Company appeared and claimed the ship, and she was released upon a bond in the sum of $100,000, with L. S. Hunt and John Collins as stipulators thereon. On October 25th and 27th, respectively, intervening libels were filed by Philip Reese, administrator of John E. Moe, and by D. J. and Ella E. Wyncoop, and also by D. J. Wyncoop. After the release of the vessel an order was entered transferring the cause to the Northern division of the district of Washington, and thereafter intervening libels were also filed respectively by Thomas Foran, Emma D. Miller, John Rankin, E. W. Vest, and Ida F. Richardson. The district court rendered a decree holding the Willamette in fault, and awarding damages to the libelant and interveners as follows: To the libelant, Jacob Nelson, for personal injuries sustained by himself, $2,500; to the intervener Philip L. Reese, for the death of John E. Moe, $5,000; to the

[1] The decree entered in this case was modified October 31, 1895. See 72 Fed. 79.

intervener Emma B. Miller, for the injuries sustained by herself, $2,500; to the interveners D. J. Wyncoop and Ella E. Wyncoop, for the death of their son, Frank C. Wyncoop, $3,500; for the injuries sustained by D. J. Wyncoop, $2,500; for the injuries sustained by Ella E. Wyncoop, $1,000; for loss and injury to baggage and property, $300; to the intervener E. W. Vest, for the injuries sustained by him, $700; to the intervener Thomas Foran, for the injuries sustained by him, $3,500; to the intervener John Rankin, for the death of his son, Joseph Rankin, $3,500; and to the intervener Ida F. Richardson, for the death of her husband, W. N. Richardson, $5,000. 59 Fed. 797. From this decree the stipulators, Hunt and Collins, have appealed.

Andrew F. Burleigh, for appellants.

D. J. Crowley, Ben Sheeks, A. R. Titlow, A. H. Garretson, and Stratton, Lewis & Gilman, for appellees.

Before McKENNA and GILBERT, Circuit Judges, and KNOWLES, District Judge.

McKENNA, Circuit Judge. The record in this case consists of many hundred pages, but we have reviewed and considered it carefully, and, being satisfied with the conclusions of the learned judge of the district court as to the cause of collision and the culpability of the Willamette, adopt his statement. It is as follows:

"This is a suit in rem by passengers who were injured and personal representatives and heirs of passengers who were killed by a collision between the passenger steamer Premier and the steam collier Willamette, on Admiralty Inlet, about midway between Marrowstone Point and Bush Point. The Premier is a steel propeller, and was, at the time of the collision, plying as a regular passenger steamer on the route from Tacoma to Whatcom, via Seattle, Port Townsend, and Anacortes. The Willamette is an iron propeller, built for the coal trade, and was, at the time of the collision, bound from Seattle to San Francisco, with a cargo of about 2,700 tons of coal. The collision occurred at 2:05 p. m., October 8, 1892. Admiralty Inlet is wide. No other vessel or obstructions impeded either of the colliding vessels. The sea was smooth. The machinery of each vessel worked well, and both were in all respects properly equipped and easily controlled. And although fog hung over the place, and enveloped both vessels at the time of the occurrence, the collision could not possibly have happened if due care, and the rules prescribed by law for the prevention of collisions, had been observed by the commanders of both vessels. The Premier has not been arrested or brought within the jurisdiction of the court. I shall therefore in this decision refrain from expressing any opinion upon the question as to whether she was in fault. If the collision was caused by culpable negligence on the part of the Willamette, she is liable for resulting injuries to passengers of the Premier, notwithstanding any fault on the part of the latter which may have been a contributing cause of the same injuries. The Atlas, 93 U. S. 302. From the testimony of the Willamette's officers, I find that she left Seattle at 10:50 a. m., in a thick fog. When off West Point she was overtaken and passed by the passenger steamer City of Kingston, bound from Seattle to Port Townsend. She passed Point No Point at 1:10 p. m., and from that time until the moment of the collision her engines were working full speed, or nearly so. I do not accept as true the statements of her officers as to the course of the Willamette from Point No Point to the place of the collision. I find, according to the preponderance of all the evidence, that the Willamette took a course from Point No Point which brought her very near to Bush Point, on the east side of the inlet. A few minutes before the collision she was actually seen by persons residing there. The Premier was then around Marrowstone Point, and had passed the Kingston, and was heading S. E. ¾ E., which was her proper course. Being in the fog, she was

sounding one blast of her whistle at frequent intervals, and said signals were heard on board of the Willamette, and also by people on Bush Point, The Willamette, instead of pursuing her proper course,—keeping on the east side of the inlet,—deviated to the westward, and took a course aimed with fatal accuracy towards the approaching Premier. The master of the Willamette, in his testimony, swears that when he heard the Premier's whistle he mistook her for the City of Kingston, and it is altogether probable that he changed the course of the Willamette with the intention of following the Kingston's wake, and that, on account of his stupidity or perversity, he failed to discover that the vessel whose notes of warning were constantly sounding was approaching, instead of being overtaken. It is proven by the testimony of the assistant engineer in charge of the Willamette's engine room at the time of the occurrence that the first and only order occasioned by the meeting was 'Astern full speed,' and this he has recorded as being given at 2:05, the very moment of the collision. The Willamette rammed the Premier at an angle of about forty-five degrees, on her port side, just abaft the foremast, with such force as to cut into her hull nearly or quite to the latter's keel, the Willamette's bow being so firmly wedged into the structure of the Premier as to render her unable by her own efforts to pull away. After towing the Premier across the inlet to the beach near Bush Point, and making her fast to the shore, her repeated efforts to back away and separate from the Premier resulted in parting a hawser, and still the two vessels remained united, until, with the assistance of a tug, the Willamette was finally liberated, and the Premier sunk. The Willamette was in fault for deviating from her proper course, and for continuing at a dangerous rate of speed when the near proximity of another vessel was in fact known to her officers, instead of stopping until the position and course of the other vessel had been made out, and proper signals for passing had been given by both vessels, as the law prescribes, and understood. As the direct result of this casualty, John E. Moe, who is represented in this suit by Philip L. Reese, as administrator of the estate of said Moe; Frank C. Wyncoop; W. N. Richardson, who is represented in this suit by his widow, Ida F. Richardson; and Joseph Rankin,—were killed; and Jacob Nelson, Emma B. Miller, D. J. Wyncoop, E. W. Vest, and Thomas Foran suffered personal injuries; all of said deceased and injured persons being passengers on board the Premier.

"The statutes of this state provide as follows: 'When the death of a person is caused by the wrongful act or neglect of another, his heirs, or personal representatives, may maintain an action for damages against the persons causing the death. * * *' 2 Hill's Code, § 138. 'A father, or in case of his death or desertion of his family, the mother, may maintain an action as plaintiff for the injury or death of a child, and a guardian for the injury or death of his ward.' Id. § 139. 'No action for a personal injury to any person occasioning his death shall abate, nor shall such right of action determine by reason of such death if he have a wife or child living, but such action may be prosecuted, or commenced and prosecuted, in favor of such wife, or in favor of the wife and children; or if no wife, in favor of such child or children.' Id. § 148. 'All steamers, vessels and boats, their tackle, apparel, and furniture, are liable * * * for injuries committed by them to persons or property within this state, or while transporting such persons or property to or from this state. Demands for these several causes constitute liens upon all steamboats, vessels and boats, and their tackle, apparel and furniture, and have priority in their order herein enumerated, and have preference over all other demands; but such liens only continue in force for the period of three years from the time the cause of action accrued.' 1 Hill's Code, § 1678."

Judgments were rendered against the Oregon Improvement Company in favor of the libelants, respectively, and subsequently summary judgments against it and L. S. J. Hunt and John Collins, stipulators. From these judgments the company and the stipulators appeal, and assign as error:

(1) That the court had no jurisdiction, because the action was commenced in the Western division of the district, and that the cause occurred in the Northern division, and claimant resides and the ship was seized in the latter division. (2) The court erred in its decree in favor of the intervening libelant Reese, administrator, for the death of his intestate, John E. Moe, and in favor of D. J. and E. E. Wyncoop for the death of their son, and for John Rankin for the death of his son, and for Ida F. Richardson for the death of her husband, for the reason that the court had no jurisdiction to entertain suits or actions in admiralty in rem to recover damages for death, brought by heirs or personal representatives of deceased persons. (3) That the court erred in decreeing that the libelants recover from the Oregon Improvement Company and said stipulators the sum of $34,686.16. (4) That it did not make a decree dismissing the libels.

These assignments of error will be considered in order.

1. The act to provide for the times and places to hold terms of the United States courts in the state of Washington provides as follows:

"Be it enacted," etc. "That the state of Washington shall constitute one judicial district.

"Sec. 2.  *  *  *

"Sec. 3. That for the purpose of holding terms of the district court, said district shall be divided into four divisions to be known as the Eastern, Southern, Northern, and Western divisions.  *  *  *

"Sec. 4. That all civil suits not of a local character, which shall be brought in the district or circuit courts of the United States for the district of Washington, in either of the said divisions against a single defendant, or where all the defendants reside in the same division of said district, shall be brought in the division in which the defendant or defendants reside, or, if there are two or more defendants residing in different divisions, such suit may be brought in either division, and all mesne and final process subject to the provisions of this act, issued in either of said divisions, may be served and executed in either or all of said divisions. All issues of fact in civil causes triable in any of the said courts shall be tried in the division where the defendant or one of the defendants reside, unless by consent of both parties the case shall be removed to some other division." 26 Stat. 45.

Against the contention of appellants the respondents urge that this act is not applicable to suits in admiralty, and cite the case of In re Louisville Underwriters, 134 U. S. 488, 10 Sup. Ct. 587. This view is not without plausibility, but we do not think it is necessary to definitely pass upon it, as we have based our decision upon other grounds. The record shows that the claimant made no objection to the jurisdiction of the court, but appeared in the action, prayed to be permitted to defend it, claimed and secured the release of the vessel upon giving a bond and signing stipulation. Afterwards, it filed exceptions to the libels, but this point was not taken, but claimant moved and obtained an order transferring the case to the Northern division, its domicile, and the case was there tried. It will be observed that the act constitutes the state one district, and there is nothing to affect its substantial jurisdiction. Mesne and final process issued in either division may be served and executed in all, and that the venue in either was not imperative against the consent of defendants is evident from the following provision of section 4:

"All issues of fact in civil causes triable in any of said courts, shall be tried in the division in which the defendant or one of the defendants reside, unless by consent of both parties the case shall be removed to some other division."

The venue of actions under statutes like the Washington statute has always been held to be a privilege which the defendant could exact or waive, even as to districts. The right of a defendant to be sued in that of his domicile may be waived, and is waived by not objecting. Trust Co. v. McGeorge, 151 U. S. 129, 14 Sup. Ct. 286. If to be sued in the district of one's domicile (usually the state in which one resides) is in the nature of a personal exemption, which may be waived, surely to be sued in a division of a district is of like nature, and may be waived. Under the act of February 18, 1875 (18 Stat. 316, 320, c. 80), which exempted national banks from suits in state courts in counties other than the county or city in which the bank was located, it was held in Bank v. Morgan, 132 U. S. 141, 10 Sup. Ct. 37, that such exemption was a personal privilege, which could be waived and was waived by appearing in such suit brought in another county, and not claiming the immunity granted by congress. Nor do we conceive that it makes any difference, in the circumstances of this case, that it is in rem. If the owner had not appeared, a different question would have arisen. By its appearance, claimant became a party (The J. W. French, 13 Fed. 916), and assumed the situation of defendant, as regards the original libelant, Nelson, and the then intervening libelants, and answered; and on its motion, as we have seen, the action was transferred to and tried in the division of its residence, and in which the ship was seized, and judgments rendered against it. As to the effect of this, in addition to the cases cited, see, also, Barry v. Foyles, 1 Pet. 314; Pollard v. Dwight, 4 Cranch, 421; Harkness v. Hyde, 98 U. S. 476; Railway Co. v. McBride, 141 U. S. 127, 11 Sup. Ct. 982; Eddy v. Lafayette, 49 Fed. 807.

2. The question presented in the second assignment of error—that is, the power of a court of admiralty to entertain jurisdiction of suit by the representatives of a deceased person when the right of action survives by the local law—has not been passed on definitely by the supreme court, though it has come up incidentally in several cases. Whenever it has arisen in the district courts, with but few exceptions, the jurisdiction has been entertained, and by a few eminent judges it has been asserted without the aid of local law. The reasoning of the latter has been left unsubstantial by the decision of the supreme court in Insurance Co. v. Brame, 95 U. S. 754, but it shows the disposition of judges. The research of other courts has made it unnecessary to review or especially cite these cases. This has been ably and accurately done in Steamboat Co. v. Chase, 16 Wall. 522; The Harrisburg, 119 U. S. 199, 7 Sup. Ct. 140; Ex parte Gordon, 104 U. S. 515; The Corsair, 145 U. S. 335, 12 Sup. Ct. 949; and no disapproval is expressed of the cases reviewed. It may not be unnecessary repetition to refer to the case of The City of Norwalk, 55 Fed. 98, in which Judge Brown, of the Southern district of New York, comments on previous decisions, and vindicates the jurisdiction of the district court with great strength of reasoning; and the cases Holmes v. Railway Co., 5 Fed. 75, and The Clatsop Chief, 8 Fed. 163, in which Judge Deady, in the Oregon district, sustained, re-

spectively, an action in personam and an action in rem, a statute in Oregon giving the right of action; and In re Humboldt Lumber Manuf'rs' Ass'n, 60 Fed. 428, decided by Judge Morrow, of the Northern district of California, following and approving Judge Brown's reasoning. The case of The City of Norwalk was affirmed on appeal by the circuit court of appeals, and the conclusion and reasoning of Judge Brown approved. 20 U. S. App. 570, 9 C. C. A. 521, and 61 Fed. 364. The court, speaking by Judge Lacombe, said:

"The case of the administratrix against the owners of the two vessels presents some further questions. It is contended that a libel in personam for damages for loss of life under the state statute (Laws N. Y. 1847, c. 450, as amended by Laws 1849, c. 256, and Laws 1870, c. 78) cannot be maintained in admiralty. This objection has been most exhaustively discussed by the learned district judge, and all the authorities bearing upon it stated and analyzed. There is nothing to add to his disposition of the question in the subdivision of his opinion which deals with it, except to say that we fully concur therein. The damages were the result of a tort committed on navigable waters of the United States. The tort was, by place and circumstance, a maritime one. The locality was within the waters of a state which, by its statute, gave to the administrator of the person killed a right to receive for the benefit of the next of kin a sum of money by way of damages for the death of the intestate. The supreme court has expressly held that such statutes are valid, even when the tort was committed on navigable waters, in the absence of any regulation of the subject by congress. Steamboat Co. v. Chase, 16 Wall. 522; Sherlock v. Alling, 93 U. S. 99. There is no question here of an attempt to create a maritime lien by a state law. That law simply gives, in certain cases, a legal right to damages for a tort, which survives the person injured, and passes, as do other rights of property, to the legal successor to his estate. The admiralty courts, before the passage of the statute, exercised jurisdiction over precisely such claims for damages, when brought in his lifetime, by the person injured; and there seems no sound reason why they should not exercise like jurisdiction when the tort is committed in a locality where the municipal law preserves the right to redress beyond the life of the injured person. It is not logically an enlargement of jurisdiction, so as to cover a general subject not cognizable before, but a mere increase of the varieties of cases embraced within that subject."

This action was in personam, but the reasoning of the court and of Judge Brown applies as well to actions in rem. If a collision is culpable, it is undoubtedly a marine tort, and the supreme court said in The City of Panama, 101 U. S., on pages 453–464:

"Injuries of the kind [the case was of injuries not resulting in death] alleged give the party a claim for compensation, and the cause of action may be prosecuted by a libel in rem against the ship; and the rule is universal that, if the libel is sustained, the decree may be enforced in rem as in other cases where a maritime lien arises. These principles are so well known, and so universally acknowledged, that argument in their support is unnecessary." Page 462.

If a claim for compensation, if the party die, can be made to survive by statute to his representatives, it would not be very complete reasoning to hold that the remedy cannot also be made to survive. Indeed, there is language of Justice Grey in the case of The H. E. Willard, 52 Fed. 387, which supports the view that, the right being created, the admiralty courts of the United States will enforce it by their own rules of procedure. The learned justice said: "When a right maritime in its nature has been created by the local law, the

admiralty courts of the United States may doubtless enforce that right according to their own rules of procedure;" citing a number of cases, among which is The Corsair, 145 U. S. 335, 12 Sup. Ct. 949. In the case at bar, however, it is enough to say that, the tort being a maritime one, it would seem on principle and authority, if the local law is competent to preserve the right of action, it is competent to give it the efficiency of a lien to be enforced in the appropriate federal tribunal.    The Lottawanna, 21 Wall. 558, 581.

3. The fourth assignment of error is not very clear.    If it means that the judgments are excessive as to amounts, it is not well taken. We cannot say the judgment of the court was not well exercised, and that the amounts awarded are excessive compensation for the injuries inflicted.    If it means more than this, it is covered by the fifth assignment of error, which we shall now proceed to consider. The assignment is general, and it is not certain that the points specifically urged here were drawn to the attention of the district court. However, the right of the libelants who intervened to recover after the ship was released is discussed by both parties in their briefs, and submitted for decision.    At the time judgments were rendered the construction of admiralty rule 34, and the extent of the jurisdiction to entertain petitions of intervening libelants, was disputable, but has since been settled by the supreme court in The Oregon (decided May 6th of this year) 158 U. S. 186, 15 Sup. Ct. 804, 814, in which it is held that a stipulation given for the release of a vessel upon the original libel to recover damages done to a vessel with which she collided does not bind the sureties to respond to claims set up by intervening petitions filed subsequently to the release, and hence the court should not entertain jurisdiction of such intervening petitions.

It follows, therefore, that the judgments of the district court in favor of the intervening libelants Emma E. Miller, and E. W. Vest, Ida F. Richardson, Thomas Foran, and John Rankin, should be reversed, and that the judgments in favor of Jacob Nelson, D. J. Wyncoop, and Ella E. Wyncoop, and D. J. and Ella E. Wyncoop, and Philip L. Reese, administrator, should be affirmed; and it is so ordered.