## THE DEL NORTE.

(District Court, D. Washington, N. D. November 29, 1898.)

1. MARITIME LIENS—STATE STATUTE—WORK OR MATERIALS FURNISHED CHARTERER.

   The effect of the statute of Washington (2 Ballinger's Ann. Codes & St. § 5953; 1 Hill's Code, § 1678) which makes every contractor, subcontractor, builder, or person having charge in whole or in part of the construction, alteration, repair, or equipment of a vessel an agent of the owner for the purpose of contracting debts on the credit of the vessel, is to relieve persons who extend credit for work done or material furnished in that state for the alteration, repair, or equipment of a vessel, at the instance of a charterer having possession, from the necessity of making inquiry as to the authority given by the charter party; and, unless they have actual knowledge of its provisions, their right to hold the vessel liable is not affected thereby.

2. SAME—VALIDITY OF STATE STATUTE—VESSELS ENGAGED IN INTERSTATE OR FOREIGN COMMERCE.

   Local statutes subjecting vessels to liens for debts contracted in equipping and fitting them for service are not regarded as amendments of the general maritime law, and, in the absence of legislation by congress establishing a uniform rule, are upheld as applied to vessels engaged in interstate or foreign commerce, and owned in other states, as being in aid of commerce, by enabling such vessels to obtain credit for necessaries when away from their home port.

John E. Humphries, for libelants.

L. C. Gilman, for claimant.

Clarence S. Preston, J. H. Powell, C. E. Remsberg, and J. B. Metcalf, for interveners.

HANFORD, District Judge. The steamship Del Norte, of San Francisco, having been chartered by her owner, a corporation of California, to the Seattle & Alaska Transportation Company, a corporation of the state of Washington, was brought to Seattle to engage in the transportation of passengers and freight between Seattle and ports in Alaska; and, while at Seattle, the charterer caused additional structures of a temporary character to be put on her deck, so as to fit the vessel for carrying live stock, and furnish additional accommodations for passengers, and purchased supplies and materials necessary for the equipment of the vessel. The bills for said supplies, materials, and work have not been paid, and these suits are being prosecuted in rem by the suppliers, material men, and workmen, to enforce liens against the vessel which they claim for the amounts due to them respectively. The crew of the

vessel have also filed intervening libels for their wages earned in operating the vessel while she was under charter, as aforesaid.

I find no defense to the claims for wages of the members of the crew, and I therefore award to them the amounts shown by the pay roll introduced in evidence.

The liens claimed by the other creditors have no basis to rest upon in the general maritime law, for the reason that there is no express contract by which the owner of the vessel agreed that credit should be given to the ship, and, except repairs amounting in value to only a few dollars, the master of the vessel did not authorize or consent to the pledging of the vessel as security for these debts. The claims, however, are founded upon a statute of this state, which provides, as follows:

"All steamers, vessels, and boats, their tackle, apparel and furniture, are liable: (1) For services rendered on board at the request of or on contract with their respective owners, masters, agents, or consignees; (2) for supplies furnished in this state for their use, at the request of their respective owners, masters, agents, or consignees; (3) for work done or material furnished in this state, for their construction, repair, or equipment, *at the request of their respective owners, masters, agents, consignees, contractors, sub-contractors, or other person or persons having charge in whole or in part of their construction, alteration, repair, or equipment; and every contractor, sub-contractor, builder, or person having charge, either in whole or in part, of the construction, alteration, repair, or equipment of any vessel shall be held to be the agent of the owner, for the purposes of this chapter.*" 2 Ballinger's Ann. Codes & St. § 5953 (1 Hill's Code, § 1678.)

It is expressly provided in the charter party that the charterer should pay all expenses incident to the operation of the vessel while in its service. I am unable to find from the evidence that the creditors knew of this condition in the charter party; but the owner, in resisting these claims, insists that, if they had exercised ordinary care and prudence as business men, they could have obtained true information as to the ownership of the vessel, and the terms and conditions under which the charterer obtained possession of her, and that the knowledge of want of authority in the charterer to incur debts upon the credit of the vessel with which they are legally chargeable precludes them from asserting liens upon the vessel.

In July, 1881, the supreme court of Washington territory gave its decision in the case of The Daisy, 2 Wash. T. 76, 3 Pac. 616, holding that the territorial statute then in force (Laws 1877, p. 216) did not give a lien for machinery put into a steamer at the request of a contractor; and, to cure what was considered to be a defect in the law, the legislature, at the session held in the winter of 1881, revised and amended the lien law. The amendment, so far as it is material to be now considered, consists in the addition, to the section above quoted, of the part which is printed in italics. The amendment is important, for, in view of the decision in the Daisy Case, it is manifest that the legislature intended to make a radical change in the law. As amended, the statute makes every contractor, subcontractor, builder, or person having charge, either in whole or in part, of the construction, alteration, repair, or equipment of any vessel, an agent of the owner for the purpose of contracting debts upon the credit of the vessel. The evident intent was to protect merchants and mechanics who should thereafter extend credit to vessels for supplies, repairs, and equipments, against technical de-

fenses on the part of owners who permit others to be in charge of the equipment or repairing of their vessels. The effect of the law is to relieve this class of creditors from the necessity of making particular inquiry as to the position or authority of persons having possession of vessels, and in charge of their equipment or of repairs being made thereon. The charter party was not made accessible to the public by being filed or recorded in any public office, and there is no evidence in the case tending to prove that the owner made any endeavor to apprise the public or these creditors of the existence of any agreement by which creditors would be deprived of the right which the statute gives to regard the charterer as agent of the owner while having charge of the equipment of the vessel and her preparation for a voyage.

I fully assent to the doctrine laid down in the decision of the supreme court in the case of The Kate, 164 U. S. 458–471, 17 Sup. Ct. 135. I understand the rule given in that decision to be that a statute similar to the one under consideration, when reasonably construed, "does not assume to give a lien where supplies are furnished to a foreign vessel upon the order of the charterer, with knowledge upon the part of the person or corporation furnishing them that the charterer does not represent the owner, but, by the contract with them, has undertaken to furnish such supplies at his own cost." But in this case the evidence fails to show that the creditors did have actual knowledge of such an agreement on the part of the charterer; and, for the reasons above stated, I hold that they were not bound to make inquiries, and therefore are not chargeable with constructive notice of the conditions of the agreement under which the charterer obtained possession of the vessel.

The owner denies the power of the legislature to subject vessels which are instruments of interstate and foreign commerce, and owned by nonresidents of the state, to liability and burdens more onerous than the general maritime law imposes. After due deliberation and weighing the arguments and authorities cited, I have reached the conclusion that the statute itself does not admit of discrimination, in the sense that its application is to be limited to domestic vessels, and no provision of the constitution of the United States or the constitution of the state of Washington prohibits the exercise of legislative power to the extent of subjecting vessels, even while engaged in interstate and foreign trade, to liens as security for debts contracted by a person in charge for supplies and materials furnished to them, and work done necessary to equip and prepare them for service. The rule is general that questions as to the validity of contracts, and the interpretation to be given to them, must be determined according to the lex loci contractus; and this is applied in commercial transactions as well as in all matters of dealing between individuals residing in different states. Although the supreme court of the United States appears, by its decision in the case of The Kate, to have avoided discussion of this question, the tendency of its decisions has been to uphold the statutes of the different states creating liens upon ships and vessels, for the security of creditors who furnish supplies and materials and do work upon them, and has encouraged such legislation by enforcing liens so created in all cases within the admiralty jurisdiction of federal courts. Local statutes, subjecting vessels to liens for the amount of unpaid bills contracted in equipping

and fitting them for service, have not been regarded as amendments of the general maritime law, but as strictly local laws, valid only so long as the congress of the United States shall refrain from exercising its power to enact a general law establishing a uniform rule throughout the whole country. The Lottawanna, 21 Wall. 558–563. Laws which enable vessels to obtain credit for necessaries when away from their home ports have always been considered as being favorable to commerce.

In The St. Jago de Cuba, 9 Wheat. 409–416, Mr. Justice Johnson, speaking of the lien of material men and other implied liens under maritime contracts, said:

"The whole object of giving admiralty process and priority of payment to privileged creditors is to furnish wings and legs to the vessel, to get back for the benefit of all concerned; that is, to complete her voyage."

The idea that a state law made to secure payment to its citizens of what is due to them for supplies furnished to and work upon foreign ships, in outfitting and preparing them for intended voyages, can be an unreasonable burden laid upon commerce, is contrary to the views which have heretofore governed the decisions of the courts in this country generally. The owner who lets his ship to be taken by a charterer away from her home port cannot reasonably complain if the vessel is held for nonpayment of her expenses. He knows what may happen to a ship in a foreign port, and he may protect himself against loss by exacting indemnity before giving possession to the charterer. That is just what the owner of the Del Norte did, for I find attached to the charter party which the claimant introduced in evidence a "Contract of Guaranty," in which the individuals who signed it promised and agreed that the Seattle & Alaska Transportation Company "will keep and perform all the covenants and conditions thereof on its part to be kept and performed on its behalf; and, should default be made in the payment of said several amounts, we will forthwith pay the same on demand, and will further pay to the said party of the first part any and all damages it may sustain by reason of the failure of said party of the second part to keep and perform any of said covenants and conditions. It being the intent and purpose of this guaranty to indemnify and save harmless the said party of the first part from any and all damages which it may sustain should said party of the second part make default in any of its undertakings, covenants, or agreements in said charter contained." The claimant acted prudently in taking this indemnity contract, and it does not appear to me that there is any merit in the argument advanced that the construction which I have given to the lien law of this state enables charterers to conspire with merchants and others to swindle shipowners by the creation of liens.

The amount of the bills is disputed, but they are supported by testimony, and there is no evidence on the part of the claimant to impeach them, except in the case of the intervener Percy G. Copp. Upon his own showing, I think that, after deducting credits, the sum of $200 is the most that can be fairly awarded as the balance due to said intervener. That amount, and half costs, will be decreed in his favor, and each of the other interveners and libelants will recover the amounts sued for.