## THE JANE GREY.

### (District Court, D. Washington, N. D. July 17, 1899.)

SHIPPING—LIABILITY OF OWNERS—NEGLIGENCE CAUSING DEATH ON THE HIGH SEAS.

The law of the forum controls in determining the question of the liability of the owners of a vessel, who are citizens of the United States, for damages for negligence resulting in death on the high seas; and, where the statutes of the state give a remedy for the tort, such remedy is enforceable in a court of admiralty.

This is a proceeding by the owners of the schooner Jane Grey for limitation of their liability growing out of the sinking of the vessel. Heard on exceptions to cross libels filed by the widows and heirs of passengers to recover damages for the death of such passengers.

J. H. Powell, for petitioners.

J. M. Weistling and G. Meade Emory, for cross libelants.

HANFORD, District Judge. In this proceeding John G. Pacey, as owner of the American schooner Jane Grey, late of the port of Seattle, and others, have petitioned the court for the benefit of the act of congress limiting the liability of the owners of vessels for damages resulting from marine disasters. The petition avers, as the reason for uniting in seeking relief, that a number of actions to recover damages have been commenced in which all the petitioners are charged as being joint owners of the Jane Grey, and jointly liable for the damages alleged to have been sustained. It appears that in the month of May, 1898, said schooner left the port of Seattle on a voyage to Kotzebue Sound, in the district of Alaska, having on board a

large number of passengers, with their equipments and supplies, who were going in search of gold and to explore that country, and while proceeding on said voyage the Jane Grey filled with water, and sank in the Pacific Ocean, and, with all her tackle, apparel, boats, appurtenances, and cargo, was completely lost, and thirty-four of the passengers and three of the crew then on board were drowned. Other persons who were on board were successful in making their escape in a small launch owned by some of the passengers. The petition avers that "said accident happened, and the loss, damage, injury, and destruction above set forth were occasioned, done, and incurred without fault or privity or knowledge of your petitioners, or any of them, and was due solely to the perils of the sea." According to the practice in such cases, an injunction was issued restraining all persons from commencing or prosecuting suits and actions for the recovery of damages resulting from said casualty pending the determination of the rights of the parties in this proceeding. The widows and heirs of several of the passengers who were drowned have entered appearances herein and filed answers and cross libels, in which they each, respectively, plead their relationship to the deceased, and charge that the disaster and loss of life were occasioned by the neglect and wrong of the petitioners in knowingly sending the Jane Grey on said voyage when she was rotten, weak, and unseaworthy, and without boats and equipments necessary for the safety of her passengers, and very much overloaded, and each of the said cross libelants prays for a decree against the petitioners jointly for full damages and costs. The case has been argued and submitted upon exceptions to each of said cross libels raising the question as to the right of the heirs or personal representatives of deceased persons to recover damages for tortious injuries taking effect upon the high seas, and resulting in death. In the light of the numerous decisions in different courts in this country and Europe which have been cited upon the argument, the question is not only interesting, but perplexing. I shall, however, leave out of view all cases other than the decisions of the supreme court of the United States, and my endeavor will be to decide the case in accordance with the principles which I regard as being established by the announced determinations of the highest court in this country.

In the case of Insurance Co. v. Brame, 95 U. S. 754–759, it was definitely and finally determined that, "by the common law, actions for injuries to the person abate by death, and cannot be revived or maintained by the executor or the heirs." In this the court followed the English decisions founded on two rules or principles of English law,—the first being the rule making a wrongful act which causes the death of a person felonious, and the other denies that the death of a person can be the subject of a private action to recover damages, for the reason that, in every such case, the private injury is deemed to have merged in the public offense. The next case to be considered is The Harrisburg, 119 U. S. 199–214, 7 Sup. Ct. 147. This was a suit in rem against the steamer Harrisburg, whose home port was in the state of Pennsylvania, and which was alleged to be the offending vessel in a collision with the schooner

Marietta Tilton, which occurred within the state of Massachusetts. The suit was brought by the widow and child of the first officer of the schooner, whose death resulted from the collision. The supreme court held that damages could not be claimed by virtue of the statutes of Pennsylvania or of Massachusetts, for the reason that the "suit was begun too late." In the opinion by Chief Justice Waite it was said:

"The statute creates a new legal liability, with the right to a suit for its enforcement, provided the suit is brought within twelve months, and not otherwise. The time within which the suit must be brought operates as a limitation of the liability itself as created, and not of the remedy alone. It is a condition attached to the right to sue at all."

The court also reaffirmed its ruling in the case of Insurance Co. v. Brame, holding "that, by the common law, no civil action lies for an injury which results in death." Having determined that, at the time of commencing suit, no liability existed by virtue of the local statutes, or of the common law, the court was necessarily called upon to consider the question whether the general maritime law, as recognized and administered by the courts of this country, entitled the family or representatives of a deceased person to recover damages for his death resulting from injuries wrongfully inflicted on board of a vessel afloat; and after a full review of the American, English, and Canadian cases, and after giving consideration to the rule which prevails in Scotland and France, and the ancient maritime laws, and the leading text-books which treat of admiralty jurisprudence, it was found, and the decision of the court is, that the maritime law, as accepted and received by maritime nations generally, has not established a different rule for the government of courts of admiralty from those which govern courts of law in matters of this kind, and there is no law of the sea which gives or denies a right to damages for the death of a person caused by a wrongful or negligent act where the injury is inflicted on water within the jurisdiction of courts of admiralty, and in this country the law of the land must determine the question as to the liability of the wrongdoer to respond in damages for maritime torts resulting in death. This decision seems to harmonize with the ideas suggested in the previous decision of the court in the case of The Scotland, 105 U. S. 24, 35. The following paragraph of the opinion of the court in the latter case, delivered by Mr. Justice Bradley, may be fairly regarded as the key to the correct understanding of the decisions of the supreme court relating to the subject under consideration. In his usual lucid style, Mr. Justice Bradley said:

"In administering justice between parties it is essential to know by what law, or code, or system of laws their mutual rights are to be determined. When they arise in a particular country or state, they are generally to be determined by the laws of that state. These laws pervade all transactions which take place where they prevail, and give them their color and legal effect. Hence, if a collision should occur in British waters, at least between British ships, and the injured party should seek relief in our courts, we would administer justice according to the British laws, so far as the rights and liabilities of the parties were concerned, provided it were shown what that law was. If not shown, we would apply our own law to the case. In the French or Dutch tribunals they would do the same. But, if a collision occurs on the

high seas, where the law of no particular state has exclusive force, but all are equal, any forum called upon to settle the rights of the parties would prima facie determine them by its own law as presumptively expressing the rules of justice; but, if the contesting vessels belonged to the same foreign nation, the court would assume that they were subject to the law of their nation carried under the common flag, and would determine the controversy accordingly. If they belonged to different nations, having different laws, since it would be unjust to apply the laws of either to the exclusion of the other, the law of the forum,—that is, the maritime law as received and practiced therein,—would properly furnish the rule of decision. In all other cases each nation will also administer justice according to its own laws, and it will do this without respect of person,—to the stranger as well as to the citizen. If it be the legislative will that any particular privilege should be enjoyed by its own citizens alone, express provisions will be made to that effect. Some laws, it is true, are necessarily special in their application to domestic ships, such as those relating to the forms of ownership, charter party, and nationality. Others follow the vessel wherever she goes, as the law of the flag, such as those which regulate the mutual relations of master and crew, and the power of the master to bind the ship or her owners. But the great mass of the laws are, or are intended to be, expressive of the rules of justice and right applicable alike to all."

In the opinion of the court by Mr. Justice Blatchford in the case of The Alaska, 130 U. S. 201–209, 9 Sup. Ct. 461, the Harrisburg Case was referred to as a decision establishing the rule "that, in the absence of an act of congress, or of a statute of a state, giving a right of action therefor, a suit in admiralty could not be maintained in the courts of the United States to recover damages for the death of a human being on the high seas, or on waters navigable from the sea, which was caused by negligence." That was a case in which the injury causing death was by a British vessel on the high seas. It was commenced in the United States district court for the Southern district of New York, and the important question as to the effect of the statutes of New York giving a right of action to recover damages for the death of a person caused by negligence, which apparently might have been ruled upon, seems to have received no consideration from the court. This omission is indicated by the following sentence in the opinion of the court:

"It is admitted by the counsel for the libelants that the statute of New York (Code Civ. Proc. § 1902) on the subject of action for death by negligence does not apply to the present case, because the deaths did not occur within the state of New York, or in waters subject to its jurisdiction. It is further to be said that that statute gives a right of action only to the executor or administrator of the deceased person, while the present suit is brought by widows; and the statute provides only for a suit against an individual person or a corporation, and not for a proceeding in rem."

This decision has often been cited as an authority against the enforcement of a right conferred by a state statute in cases where the injury was inflicted at sea, as if the concession made by the counsel in the case were in effect the same as a decision of the question by the court. I think, however, that the care taken to point out the fact that the question was not litigated must be taken as plainly indicating that the court did not intend that its decision of the case should be in any sense a decision of the question. The decision in the case of The Corsair, 145 U. S. 335–348, 12 Sup. Ct. 949, is in line with the decision in the case of The Harrisburg, and carries out the idea suggested in the opinion in the case of The Alaska, that a suit in

rem cannot be maintained in a United States district court under a state statute which merely provides that a right of action survives to the administrator or relatives of the deceased, but creates no lien. In the case of Stewart v. Railroad Co., 168 U. S. 445–450, 18 Sup. Ct. 105, the supreme court upheld the right of a plaintiff to maintain an action in the District of Columbia to recover damages for an injury done in the state of Maryland, causing the death of the injured person, and, in the opinion of the court by Mr. Justice Brewer, the principles upon which the decision rests are set forth as follows:

"A negligent act causing death is in itself a tort, and, were it not for the rule founded on the maxim, 'Actio personalis moritur cum persona,' damages therefor could have been recovered in an action at common law. The case differs in this important feature from those in which a penalty is imposed for an act in itself not wrongful, in which a purely statutory delict is created. The purpose of the several statutes passed in the states, in more or less conformity to what is known as 'Lord Campbell's Act,' is to provide the means for recovering the damages caused by that which is essentially and in its nature a tort. Such statutes are not penal, but remedial, for the benefit of the persons injured by the death. An action to recover damages for a tort is not local, but transitory, and can, as a general rule, be maintained wherever the wrongdoer can be found. Dennick v. Railroad Co., 103 U. S. 11. It may well be that, where a purely statutory right is created, the special remedy provided by the statute for the enforcement of that right must be pursued; but, where the statute simply takes away a common-law obstacle to a recovery for an admitted tort, it would seem not unreasonable to hold that an action for that tort can be maintained in any state in which that common-law obstacle has been removed. At least, it has been held by this court in repeated cases that an action for such a tort can be maintained 'where the statute of the state in which the cause of action arose is not, in substance, inconsistent with the statutes or public policy of the state in which the right of action is sought to be enforced.' Railway v. Cox, 145 U. S. 593–605, 12 Sup. Ct. 905. See, also, Dennick v. Railroad Co., 103 U. S. 11; Huntington v. Attrill, 146 U. S. 657, 13 Sup. Ct. 224; Railroad Co. v. Babcock, 154 U. S. 190, 14 Sup. Ct. 978."

Since the maritime law is not inconsistent with the right to recover damages for the death of a person caused by a wrongful or negligent act, the decision in the case of Stewart v. Railroad Co. is an authority fully supporting the proposition that the law of the forum must control in determining the question as to the liability of the owners of a vessel, who are citizens of the United States, for damages caused by their negligence resulting in death. The rule of the common law is not now a barrier to the right to recover damages for the death of a person, because in this state and in all the states of the Union the common law has been changed by statutory enactments. 5 Enc. Pl. & Prac. 849. The statutes of this state provide:

"When the death of a person is caused by the wrongful act or negligence of another, his heirs or personal representatives may maintain an action for damages against the person causing the death. * * * In every such action the jury may give such damages, pecuniary or exemplary, as under all the circumstances of the case may to them seem just." 2 Ballinger's Ann. Codes & St. Wash. § 4828 (2 Hill's Code, § 138).

"All steamers, vessels, and boats, their tackle, apparel, and furniture, are liable * * * for injuries committed by them to persons or property within this state, or while transporting such persons or property to or from this state. Demands for these several causes constitute liens upon all steamers, vessels, and boats, and their tackle, apparel, and furniture, and have priority in their order herein enumerated, and have preference over all other demands; but

such liens only continue in force for the period of three years from the time the cause of action accrued." 2 Ballinger's Ann. Codes & St. Wash. § 5953 (1 Hill's Code, § 1678). See, also, The Willamette, 59 Fed. 797; Id., 18 C. C. A. 366, 70 Fed. 874.

If the facts pleaded by the widows and orphans who have appeared as cross libelants in this case are true, the law of the land entitles them to damages, and the law of the sea is not inconsistent with the rights which they seek to enforce. Exceptions overruled.