## THE ROBERT DOLLAR.

### (District Court, D. Washington, N. D.    April 2, 1902.)

1. **MARITIME LIENS—SUPPLIES—DEFENSE BY CHARTERER.**

    A charterer who has obtained necessary supplies on the credit of the ship, in violation of his agreement with the owner in the charter party, cannot plead such agreement to defeat a lien by the creditor.

2. **SAME—STATE STATUTES—CONSTITUTIONALITY.**

    State statutes giving liens on ships for necessary repairs or supplies furnished on the credit of the vessel, which are enforceable by process in rem, in a court of admiralty, as arising under maritime contracts, cannot be classed as laws intended to impose burdens upon interstate or foreign commerce, and for that reason held unconstitutional, though applied to foreign ships, but their purpose and effect, like liens given by

the general maritime law, are to facilitate commerce by enabling the ship to obtain the things necessary to the prosecution and completion of her voyage.

**8. SAME—APPLICABILITY TO FOREIGN SHIPS—WASHINGTON STATUTES.**
The statute of Washington (1 Hill's Code, § 1678), which makes every master, consignee, or person having charge of the construction, alteration, repair, or equipment of any vessel an agent of the owner for the purpose of contracting debts on the credit of the vessel, is applicable to foreign vessels obtaining repairs or supplies in ports of the state, as well as to domestic vessels.

**4. SAME—NECESSARY SUPPLIES—BAR FIXTURES AND SUPPLIES.**
Bar supplies and fixtures furnished to a vessel are not necessaries, for the price of which a suit in rem against the vessel may be maintained, under the twelfth admiralty rule.

In Admiralty. Suit in rem to recover the contract price for supplies furnished to the steamship Robert Dollar, by the libelants, in Alaska, upon the order of the master, and also to recover for supplies and equipments furnished by the intervening libelants, at Seattle, at the request of a charterer in possession, who was obligated by the charter party to pay all expense bills and return the ship free from liens. The charterer alone appears as claimant, and defends on grounds stated in this opinion. Decree for libelants and intervening libelants, except as to bills for fixtures and supplies required for, and consumed in conducting, a bar.

Preston, Carr & Gilman, for libelants and intervening libelants.
Hoyt & Haight, for claimant.

HANFORD, District Judge. It is shown by the uncontradicted evidence in this case that, while the Robert Dollar was being operated as a carrier of freight and passengers between Seattle and Nome and other places in Alaska, it was necessary for her to replenish her supplies of coal and water at Dutch Harbor, both in going north and returning; that her master did not have money to pay her bills for these necessaries; and that upon his request the libelant furnished coal, water, and provisions to the steamer, which were necessary for her use and to feed her passengers and crew; that neither the owner nor charterer had any credit at Dutch Harbor; and said supplies had to be obtained on the credit of the ship. These are the conditions under which, by the maritime law, a lien becomes attached to a ship, and the only semblance of a defense to this part of the case is made upon the ground that by the charter party it was agreed between the owner and the charterer that the latter should pay all the bills incurred in operating the vessel during the period for which she was hired, and should, at the expiration of said period, return the vessel to her owner free from liens. It is not pretended that the libelant had actual knowledge of this stipulation in the charter party; but it is claimed that the fact that the vessel was chartered to the Alaska & Pacific Steamship Company had been announced in newspapers, and was generally known among merchants and shipping men, and that the captain had possession of a copy of the charter party; so that if the libelants had made inquiry they might have become informed with respect to its condi-

tions. There are two reasons why this defense cannot prevail. In the first place, the indebtedness was incurred by the master of the ship, who was appointed by the owner, and whose authority was ample to abrogate the agreement whenever it became necessary to do so in order to enable the vessel to get on and complete her voyage. The second reason is that this defense is not available to the charterer. Liens for supplies upon chartered vessels, in favor of creditors to whom notice has been given that the owners have parted with their possession relying upon agreements that the charterers will keep them free from liens, are not permitted, because the pledging of the credit of a ship under such conditions would be fraudulent, and the courts have refused to recognize such fraudulent claims in cases in which the owners have appeared to defend against them. But when a charterer obtains supplies on the credit of a ship in violation of a promise made to the owner that he will not do so, he has no right to plead his own broken promise to defeat his creditors. Each of the intervening libelants furnished goods which were necessary for supplying and equipping the vessel at Seattle, upon requests from the managing officers of the Alaska & Pacific Steamship Company, the charterer, and as the charter party does not confer authority to pledge the credit of the vessel, these creditors must rely upon the statutes of this state, and not upon the general maritime law. The statute makes every master, consignee, contractor, subcontractor, builder, or person having charge, either in whole or in part, of the construction, alteration, repair, or equipment of any vessel an agent of the owner for the purpose of contracting debts upon the credit of the vessel. 2 Ballinger's Ann. Codes & St. § 5953; 1 Hill's Code, § 1678; The Del Norte (D. C.) 90 Fed. 506; The North Pacific, 40 C. C. A. 510, 100 Fed. 490; The South Portland, 40 C. C. A. 514, 100 Fed. 494. This law is general in its terms, applying to all steamers, vessels, and boats having occasion, within this state, to obtain supplies or new equipments on credit; but in view of criticisms which have been made upon the decision of this court in the case of The Del Norte, and of the decision of the United States circuit court for this district in the case of McRae v. Dredging Co., 86 Fed. 344, it is now contended in this case, and in other cases which have recently been argued and submitted and are now under advisement, that the statute is inapplicable to vessels not owned within the state, for the reason that it is not within the power of the legislature of any state to create maritime liens, or amend the laws affecting liens upon vessels not owned by citizens of the same state, because vessels are instruments of interstate and foreign commerce, and liens upon such vessels are burdens upon interstate and foreign commerce, and repugnant to the clause of the constitution which confers upon congress the power to regulate commerce between the states and with foreign countries, and with the Indian tribes. In a new book on admiralty law the learned author expresses his belief that, when the question shall be presented to the supreme court in such a manner as to render its decision necessary, it will hold that state statutes creating liens on vessels "only apply to the rights of material

men against domestic vessels." Hughes, Adm. pp. III, 112. As the supreme court has not given any intimation to justify the author's expectations, any mere conjecture is useless. Subordinate courts must decide according to their best judgment, and presume that the supreme court, when it comes to pass upon the question, will render a true decision, based on sound reasons. Therefore consideration must be given to the constitution and laws of the United States, the decisons of the supreme court by which the same have been expounded, and the general principles of jurisprudence of this country. The following are some of the reasons which have come into my mind as being applicable, and of controlling force, in the decision of the question now presented: In the first place, the nature and limitations of valid statutes creating liens upon vessels should be kept in mind  The maritime law gives liens for necessary supplies and repairs to a foreign ship, for a purpose; and that purpose is to give wings and legs to ships to enable them to get on and complete their voyages for the good of all concerned, by making the credit of the ship available to procure necessaries. The St. Jago de Cuba, 9 Wheat. 409, 6 L. Ed. 122. Statutory liens, which are enforceable by process in rem in the admiralty courts of this country, have the same purpose and effect; for the federal courts take cognizance of suits in rem to enforce liens given by local statutes only when the lien is asserted as an incident of a maritime debt. for necessary supplies or materials furnished, or for repairs or labor on the credit of the ship. The Lottawanna, 21 Wall. 558–609, 22 L. Ed. 654; The North Pacific, 40 C. C. A. 510, 100 Fed. 490. Therefore it is error to treat statutory liens enforceable in admiralty as burdens upon commerce, or to class them with laws intended to interfere with freedom of commercial intercourse. It is next to be observed that the place of residence of the owner of a ship, or of a railroad, has nothing whatever to do with fixing the relationship of such property to interstate or foreign commerce. A ship employed as a carrier of passengers or merchandise upon public waters within a state, towards their destination, within the state or elsewhere, is as much an instrument of interstate and foreign commerce when her owner resides within the same state as she can possibly be, when the owner's place of residence and her home port is in another state or any foreign country. Any law which discriminates in favor of nonresident shipowners is equally as obnoxious to the principles of justice and the requirements of fair trade as a law which discriminates against nonresident shipowners, and it cannot be presumed that the supreme court, in affirming the validity of statutory liens incidental to maritime contracts, ever contemplated that the laws creating such liens must be so construed as to make them unfair. Another important consideration is that, if the interstate and foreign commerce clause of the constitution is potent to shield foreign vessels from liens provided for by state laws to secure debts incidental to maritime contracts, the same rule of construction, if carried to its logical sequence, would annul all state laws providing legal process for the collection of debts contracted by nonresidents in commercial dealings with

inhabitants of the state; for if a lien upon a ship is a burden upon commerce, the levying of an execution for the satisfaction of a judgment upon the cargo of a ship or any consignment of merchandise brought into the state from another state or a foreign country, to be sold in the course of trade, is also a burden upon commerce, and has a tendency equally as strong to discourage commercial ventures. Whether merchandise can be attached and sold for a debt of the owner pursuant to the laws of the state in which it is situated, when the owner is a citizen and resident of a different state, is not at this time a debatable question. Nearly that precise question, though it was stated differently, was passed upon by the supreme court in the case of Green v. Van Buskirk, 7 Wall. 139–152, 19 L. Ed. 109, which was an action commenced in a court of the state of New York, by a citizen of New York, against another citizen of the same state; and the question was whether the plaintiff or the defendant had acquired a prior lien upon 41 iron safes in Chicago, owned by a debtor of both parties, who was also a citizen and resident of the state of New York. The plaintiff claimed under a chattel mortgage. The defendant caused a writ of attachment to be issued, and a levy made thereunder, after the date of the mortgage, but prior to the recording of that instrument. Under the laws of New York the mortgage was effective from the time of its delivery, and the plaintiff, as mortgagee, acquired a lien superior to the attachment, but under the statute of Illinois the mortgage did not become a lien until it was filed for record in that state; therefore, it was subordinate to the attachment. The supreme court reversed the decison of the highest court of the state of New York, and held that the statutes of the state in which the property was situated were controlling. Walworth v. Harris, 129 U. S. 355, 366, 9 Sup. Ct. 340, 32 L. Ed. 712, is a case in point, and the decision of the supreme court in that case is to the effect that cotton produced in the state of Arkansas, and subject to a landlord's lien there, under a statute of Arkansas, upon being sent to market at New Orleans, became subject to a lien in favor of the consignee for advances and incidental charges under a statute of the state of Louisiana, and that the Louisiana lien was paramount to the Arkansas lien, on the ground that when the property was imported into the state of Louisiana it became subject to the laws enacted by that state. In this the court reaffirmed its rulings in several cases cited by Mr. Justice Miller in the opinion of the court, which he delivered. I consider that the interstate commerce clause of the constitution cannot now be extended to exempt the property of nonresident owners from the claims of creditors under state lien laws, or writs of attachment, or other judicial process, without destroying principles which have become fixed under the sanction of a line of decisions of the supreme court; and I believe that a departure from those principles now would be disturbing, and injurious to the business interests of the country. I think that the supreme court has declared its position on this subject in the twelfth admiralty rule. As originally promulgated, that rule provided that where the local law gives a lien for repairs and supplies or other necessaries

furnished a domestic ship, the creditors might proceed to enforce it as in the case of a foreign ship. By an amendment to the rule in 1859, the right to enforce local lien laws in the admiralty courts was taken away, but on May 6, 1872, the rule was again amended to read as follows:

"In all suits by material-men for supplies, or repairs, or other necessaries, the libelant may proceed against the ship and freight in rem, or against the master or owner alone in personam."

And no further amendment or modification of the rule has been made. In practice this rule has been construed in harmony with the principle that a suit in rem can only be maintained to enforce a lien, and when there is no lien the remedy of creditors is confined to suits in personam, but the rule is comprehensive in allowing suits in rem to be prosecuted for the collection of debts for supplies, repairs, and other necessaries, when the ship or vessel is subject to a lien, whether that lien is given by a local statute or by the general maritime laws. 19 Am. & Eng. Enc. Law, 1105. I think there is significance in the fact that when the rule was amended the second time, instead of restoring the original phraseology, which limited the application of statutory liens to domestic vessels, the rule was recast entirely, and the words indicating a distinction between domestic ships and foreign ships were omitted.

It has been often asserted, as if it were an axiom, that a state legislature has no power to amend or change the admiralty laws, nor to create a maritime lien; but all the force has been taken out of that idea by the decisions of the supreme court. A summary of the doctrine of the supreme court bearing upon this subject is contained in the opinion of that court by Mr. Justice Gray in the case of The J. E. Rumbell, 148 U. S. 1–21, 13 Sup. Ct. 498–503, 37 L. Ed. 345, and a concise statement of the doctrine is contained in the two paragraphs of that opinion which are here quoted:

"The settled rules of jurisdiction and practice on this subject were stated by Mr. Justice Bradley in The Lottawanna, as follows: 'So long as congress does not interpose to regulate the subject, the rights of material men furnishing necessaries to a vessel in her home port may be regulated in each state by state legislation. State laws, it is true, cannot exclude the contract for furnishing such necessaries from the domain of admiralty jurisdiction; for it is a maritime contract, and they cannot alter the limits of that jurisdiction; nor can they confer it upon the state courts, so as to enable them to proceed in rem for the enforcement of liens created by such state laws, for it is exclusively conferred upon the district courts of the United States. They can only authorize the enforcement thereof by common-law remedies, or such remedies as are equivalent thereto. But the district courts of the United States, having jurisdiction of the contract as a maritime one, may enforce liens given for its security, even when created by the state laws.' 21 Wall. 580, 22 L. Ed. 654. * * * According to the great preponderance of American authority, therefore, as well as upon settled principles, the lien created by the statute of a state, for repairs or supplies furnished to a vessel in her home port, has the like precedence over a prior mortgage that is accorded to a lien for repairs or supplies in a foreign port under the general maritime law, as recognized and adopted in the United States. Each rests upon the furnishing of supplies to the ship on the credit of the ship herself, to preserve her existence and secure her usefulness, for the benefit of all having any title or interest in her. Each creates a jus in re,—a right of property in the vessel,—existing independently of possession, and arising

as soon as the contract is made, and before the initiation of judicial proceedings to enforce it. The contract in each case is maritime, and the lien which the law gives to secure it is maritime in its nature, and is enforced in admiralty by reason of its maritime nature only."

In the case of The Glide, 167 U. S. 606–624, 17 Sup. Ct. 930, 42 L. Ed. 296, Mr. Justice Gray delivered another instructive opinion, reviewing all the previous decisions of the court touching the subject of jurisdiction to enforce state lien laws by proceedings in rem against vessels, and reiterated the declaration that a lien given by a statute of a state to secure a debt created by a maritime contract is for all practical purposes the same as a maritime lien. If a lien upon a ship may not be called a "maritime lien" without offending against accuracy in the use of terms, still the name is not of vital importance, since the supreme court has affirmed that the nature and effect of liens created by state laws, enforceable in the admiralty courts, are the same as liens which have their foundation in the system of laws commonly known as the general maritime law. Substantially, and for all practical purposes, one kind of a lien is as much a maritime lien as the other. The most arbitrary of the state laws affecting commerce and burdensome upon ships are the compulsory pilotage laws, which authorize licensed pilots to tender their services to vessels, and provide that the pilot first to offer his services to an inward bound vessel may, if he is not required, and if his services are declined, collect half the compensation which he would have earned if employed. These laws are admitted to be regulations of navigation, and of interstate and foreign commerce; and yet, so long as congress refrains from enacting laws on the subject, these local statutes, and the rights and obligations which they create, may be enforced by the process of admiralty courts. By its decision in the case of Ex parte McNiel, 13 Wall. 236–243, 20 L. Ed. 624, the supreme court in effect affirmed a decree of the United States district court for the Eastern district of New York, which obtained jurisdiction by attaching a foreign ship for half pilotage fees claimed by the libelant under a New York statute, and the concluding paragraph of the opinion by Mr. Justice Swayne contains the following broad and comprehensive statement of the rule on this subject:

"A state law may give a substantial right of such a character that where there is no impediment arising from the residence of the parties the right may be enforced in the proper federal tribunal, whether it be a court of equity, of admiralty, or of common law."

See, also, The China, 7 Wall. 53–71, 19 L. Ed. 67; Homer Ramsdell Transp. Co. v. La Compagnie Generale Transatlantique, 182 U. S. 406–417, 21 Sup. Ct. 831, 45 L. Ed. 1155; Huus v. Steamship Co., 182 U. S. 392–397, 21 Sup. Ct. 827, 45 L. Ed. 1146.

In this country suits in rem cannot be maintained to recover damages for a personal injury resulting in death caused by a maritime tort, when there is no local statute creating a lien upon an offending vessel for such damages. The Corsair, 145 U. S. 335–348, 12 Sup. Ct. 949, 36 L. Ed. 727; The Jane Gray (D. C.) 95 Fed. 693; Id., 99 Fed. 582. But the law of the forum, or the law of the country

to which an offending ship belongs, may be applied in such cases. The Scotland, 105 U. S. 24–35, 26 L. Ed. 1001; The Jane Gray, supra; and if a state law gives a right of action and a lien a suit in rem may be brought in the United States district court for the district in which the vessel can be attached to enforce them. Hughes, Adm. pp. 202–210. In many cases the federal courts have held that a lien given by a state law for negligence, or a wrongful act causing the death of a person, may be enforced by a suit in rem in a United States district court. The Oregon (D. C.) 45 Fed. 62. See Id., 158 U. S. 186, 15 Sup. Ct. 804, 39 L. Ed. 943; The City of Norwalk (D .C.) 55 Fed. 98; The Willamette, 18 C. C. A. 366, 70 Fed. 874, 31 L. R. A. 715; Association v. Christopherson, 19 C. C. A. 481, 73 Fed. 239, 46 L. R. A. 264; Robinson v. Navigation Co., 20 C. C. A. 86, 73 Fed. 883; 8 Am. & Eng. Enc. Law (2d Ed.) 884.

I cannot hope, and will not attempt, to exhaust the subject in this opinion. All the matters above set forth confirm my belief that foreign vessels are not exempt from liability under the lien law of this state. We must not be blind to the existence of things which are obvious, nor ignore conditions which exist, and it is true in fact that in spite of theories state lien laws have, with the sanction of the supreme court of the United States, become ingrafted upon the maritime law administered by the federal courts in this country, and the changes which have been made by the state laws adopted in practice by the federal courts are likely to be permanent. In view of what has actually taken place, I have no hesitation in holding that vessels which are foreign to the ports of this state are, as to all transactions by their masters, owners, and charterers within this state, subject to the liabilities created by the statutes of this state to the same extent as domestic vessels.

The libel of F. A. Buck & Co. is for the price of liquors and supplies for a bar which was conducted on board the Robert Dollar for the profit of the charterer. It is always optional with the owner of a vessel whether to conduct a bar on board or not, and, as it is not essential to the navigation of the vessel, or to the safety and comfort of passengers, I cannot regard bar supplies as "necessaries" in the sense in which that word is used in the twelfth admiralty rule. Under that rule, material men cannot sue in rem for supplies furnished, other than necessaries. The bill of Frederick & Nelson includes an item of $12 for an ice box, which was required as part of the bar fixtures, and therefore not one of the "necessaries" for the equipment of the ship as a carrier of passengers and freight. This item, and the entire bill of F. A. Buck & Co., must be disallowed. I find from the evidence that all of the other demands of the libelants and the several intervening libelants are for necessary supplies furnished upon the credit of the vessel, and constitute valid liens. A decree will be entered for the several amounts sued for, with interest and costs, except as I have indicated.